## No. 11,319.

### HEIRS OF BURNEY VS. JOHN T. LUDELING ET ALS.

No compromise of the claim of a minor by the tutor is valid without the intervention of a family meeting to advise it. C. C., Art. 3072; 15 An. 148.

The prescription of one year mentioned in Art. 3536, C. C., can only be applied to damages springing from the infringement of some right personal to the individual, or relating to his property, or the violation of some duty imposed by law. If these ingredients are not present it is not a *quasi offence*.

The obligation of persons who have acquired minor's property without the forms of law to restore the thing, the fruits and the revenues result, not from an offence, or *quasi* offence, but from a *quasi* contract.

Where the administrator by private sale has illegally disposed of succession property in which minors are interested, an administration sale afterward provoked in order to confirm the title of the purchaser at private sale is null and void, as it is not a *bona fide* proceeding provoked to pay the debts of a succession. Such a sale can only have the effect of destroying competition among bidders for the succession property.

| 47 | 73 |
| 47 | 947 |
| 47 | 1435 |
| 47 | 73 |
| 49 | 971 |
| 47 | 73 |
| 110 | 820 |
| 47 | 73 |
| 121 | 859 |

A railroad corporation is a *quasi* public agent, and it is its duty, independent of any agreement to secure an advantage to the corporation, to establish its stations most convenient for the public interests. An agreement, therefore, by the corporation for a part of the land to establish its depots and hotels at particular points is illegal. 18 Pick. 472, 481–3; 60 Ill. 138; 64 Ill. 414; 45 Mo. 414; 13 So. Rep. 103.

All agreements which tend to injure the public service are illegal. Any agreement, therefore, which contemplates the use of private influence to secure some desired legislation is null and void. 16 How. 314, 334; 21 Wall. 441; 40 N. Y. 543.

Obligations *in solido* are not presumed. They must be expressly stipulated, unless they take place of right by virtue of some provision of law. 2095 C. C.

Joint purchasers of property, unless there is an express stipulation to that effect, can not be held liable *in solido* for the purchase price of the property. 1 An. 432; 18 An. 291; 13 La. 447; 3 Rob. 256.

Judgment affirmed as to property remaining in possession of defendants. In all other respects avoided and reversed, and judgment of non-suit as to property disposed of and not identified.

APPEAL from the Fifth District Court, Parish of Ouachita. *Richardson, J.*

*Boatner & Lamkin* for Plaintiffs and Appellees.

*Stubbs & Russell* and *Potts & Hudson* for Defendants, Appellants.

*C. J. Boatner* filed a brief for Appellees on application for a rehearing.

The opinion of the court was delivered by

McEnery, J. One of the plaintiffs, McLain, died during the pendency of this appeal, and her representative has been made a party.

The plaintiffs, heirs of R. W. Burney and Fredonia Burney, both of whom died in 1866, claim certain real property remaining in the hands of defendants, and the proceeds of the sale of the real property sold by defendants, all of which they inherited from their deceased parents. They charge that the defendants, one of whom was administrator of the estate of R. W. Burney, fraudulently schemed, combined and conspired, during their minority, to spoliate them of their property.

The petition sets out a number of acts which the plaintiffs allege are absolutely null and void, and which never divested the title of the property in the succession of Burney. The prayer of the peti-

tion is, "that on final trial hereof all the proceedings herein set forth, to-wit., the several purchases by Towne, J. J. Garrard and John T. Ludeling, be decreed to be absolute nullities in so far as the same purports to divest the estate of R. W. Burney to the aforesaid property, and your petitioner decreed owners of two-fifths interest in such of said property as now stands in the name of the defendants herein as per the statement filed herewith. That they have judgment against said defendants *in solido* for two-fifths of the sum of fifty-nine thousand eight hundred and twenty-two dollars and seventy-two cents, with five per cent. per annum interest on the proceeds of the several sales of said property by the several parties as set forth in the detailed statement of said sales hereto annexed and made part hereof," etc.

Several exceptions were filed to the suit of plaintiffs, which were sustained by the District Judge, and on an appeal to this court judgment was reversed and the case remanded, ordering additional parties to be made defendants. 41 An. 627. The necessary parties having been made, and service having been made upon them, they answered, pleading a general denial, prescription *res judicata* and estoppel and special defences, the prescription of one year under Arts: 1987, 1994 and 3536, and ten years under Arts. 3474, 3478 and 2221, and thirty years under Art. 3548 of the Civil Code.

The plea of estoppel is based on the silence of Mrs. Burney and her children and their failure to make objection to the title acquired by Towne, administrator, in October, 1868, at judicial sale of said property in the proceedings of Woodman vs. Teckell, Executor, at which sale Towne was a purchaser of Woodman's interest in the property claimed by plaintiffs in good faith and paid the price of the adjudication and received a deed to Woodman's interest, which was duly recorded in Madison parish.

The plea of *res judicata* is based on the fact that the tutor of the present plaintiffs, the minors, joined the other heirs of Burney in a suit against E. B. Towne, administrator, in which they set forth the same cause of action and prayed for the same relief as in the present suit, which it is affirmed was compromised and settled.

The answers of defendants are lengthy, but as they refer to several acts attacked by plaintiffs we will refer to them at length, and will select the answer filed by the defendant Stubbs as containing the full defences made by the defendants.

It is averred in this answer that the respondent, with the other defendants, was the purchaser of the Vicksburg, Shreveport & Texas Railroad, and that he and his associates were engaged in rebuilding said road, which had been destroyed during the war. Changes at its *terminus* opposite Vicksburg necessitated the selection of another *terminus*. That during the years 1867 and 1868 several persons, owners of property from the point opposite the mouth of the Yazoo river down to Warrenton, several miles below Vicksburg, made offers to respondent and those interested with him, for the location of the eastern *terminus* on their lands on the Mississippi river; no one offering inducements to Ludeling and associates less than the right of way, depot grounds, and one-half of the balance of their respective properties.

That all the lands in that section of country were then largely reduced in value, very few places having any buildings or fences left on them. That what was then known as the Woodman and Burney property had neither buildings nor fences, and was unprotected by levees from the Mississippi overflow. That early in the spring of 1868, the White property, the Genella tract, the Kennedy-Towne tract and the Woodman and Burney tract, as well as others, were offered to Ludeling and associates on most liberal terms in case they would locate the *terminus* of the railroad on their tracts. That in June, 1868, after having had the whole country carefully examined and surveyed by Major J. W. Green, chief engineer, a portion of the Kennedy-Towne tract, with a portion of the Woodman-Burney tract adjoining, was selected and reported by him as a suitable and safe *terminus* of the railroad, and as near to Vicksburg as it was then prudent to build, whereupon an agreement was then entered into by Ludeling for his company, with P. J. Kennedy and E. B. Towne, who respectively claimed to be the owners and in possession of the said Towne and Woodman and Burney lands, and your respondents and associates agreed to locate the *terminus* of the railroad on said lands, and to have, at their own expense, a portion of it laid off with lots and squares, and that, in consideration thereof, they were to have right of way, depot grounds, one-half of the lots and an undivided one-half ($\frac{1}{2}$) of the balance of the property. That J. J. Garrard, who had acquired one-half interest with Towne in the Woodman and Burney lands, joined with Towne in making the

agreement. That Towne represented that he had, and respondent avers that he was the owner of Secs. 11 and 15, in T. 16 N., R. 15 E., which was the portion of the Woodman and Burney lands included in the agreement of Ludeling and associates with Towne, Kennedy and Garrard. That about the 6th of October, 1886, Ezra B. Towne, under an order of seizure and sale, issued under a decree of a court of competent jurisdiction in the suit of F. F. Woodman vs. Teckell, Executor of the O: O. Woodman, purchased said Secs. 11 and 15, T. 16 N., R. 15 E. That all the requirements of law were observed in said sale, and that Towne was a purchaser in good faith, and the deed from the sheriff to him was duly recorded. That Towne's title was legal and valid. That when Towne, under the agreement with Ludeling and associates for the *terminus* of the road on the property sold to them, which was also for one thousand dollars in cash, and the use of their personal influence to have the parish site fixed on said land he, Towne, informed them that his purchase of the land at sheriff's sale in October, 1868, should inure to the benefit of the children of his dead friend, R. W. Burney, and that the arrangement with J. J. Garrard relieved the estate of a debt which rendered it insolvent, and that the one-fourth reserved to himself in the division to be made after paying the liabilities of the estate would be transferred to the children of Burney; that he had already, under the advice of a family meeting, transferred to Garrard, a large creditor of the estate of Burney for twenty-four thousand dollars, an undivided half interest in said Secs. 11 and 15 in settlement of said claim, hence it was necessary that Garrard should join in the verbal agreement between Towne and Ludeling and associates.

Respondent avers that he and his co-respondents with the author of their title, Towne and Woodman's estate, from which Towne acquired, and the authors of Woodman's title, have held the property under title translative of property for more than thirty years and in good faith, and he pleads the prescription of ten and thirty years in support of his title and that of his co-respondents.

He further avers that in the meantime Garrard transferred his rights to Mrs. Lucy V. Ames, one of the respondents, and that Ludeling and associates complied with every stipulation in regard to the location of the *terminus*, the payment of the money and the location

and mapping out of the town of Delta; a formal title, 1st day of May, 1869, was made by Towne to Ludeling and the railroad company of the interest in the lands arranged for on the basis of the original agreement, the act being passed before a notary public and recorded 5th May, 1869, in the parish of Madison. He further avers that about this time he and his associates were approached by the executor of O. O. Woodman's estate and other representatives, claiming that the estate of Woodman had never been divested of title to this property; that although there was of record a transfer to R. W. Burney of the property, they were in possession of a counter letter of Burney, given at the time, showing that the transfer was not real but for the purpose of O. O. Woodman, and under its terms they had a right to and would compel by suit the reconveyance of the lands to the estate and heirs of Woodman; that said heirs of Woodman proposed to confirm to respondents all the advantages accruing to them from the agreement with Towne and Gerrard, provided respondents would abandon Towne and Burney heirs and Mrs. Ames and act with them in suits against these parties.

Respondents, after a full examination of the facts, having already acquired their rights with a knowledge of the equities between Woodman and Burney, but observing some informalities in the proceeding that resulted in the sale to Towne, which might have endangered the same if set up on trial, but which have long since been cured by lapse of time, and being earnestly sought by Towne to assist him in the assertion and protection of the interests of R. W. Burney, refused the proposition of Woodman's heirs and provoked the proceedings which resulted in the sale to Ludeling on 25th June, 1869, for the sole purpose of perfecting the title, and protecting the interests of the heirs of R. W. Burney from the inequitable though apparently legal claim of the heirs of Woodman.

The respondents recite the facts of the pursuit of said property by a creditor of Woodman, in taking out some sort of proceeding against the sale of said property to Ludeling on 25th June, 1869, and a suit filed by the same creditor in the State Court of Mississippi, and afterward in the United States Circuit Court, and their efforts, at great expense and trouble, to protect said property for their own benefit and for the interests of the heirs of Burney. They aver that the declarations in the act, 9th November, 1869, in relation to Towne's one-fourth interest in the division of the property had refer-

ence only to the half interest in said property, which Towne acquired at sheriff's sale, October, 1866, in the suit of Woodman vs. Teckell, Executor, and denying that the succession of Burney, at the time of said sale, had any interest in the lands. They aver that prior to the arrangement about locating the *terminus* of the road and building of a town, the lands were subject to overflow and worth not more than fifteen dollars per acre. That the enhanced value of said lands was due to the fact of locating the town of Delta upon them, through the efforts of respondents, and that since the changes in the river the town of Delta has been destroyed; that the children of Burney, especially the plaintiffs, have enjoyed since 1869 the revenues arising from the rents of all the property, except a few acres used as a grand right of way and for town lots; that plaintiffs and their husbands, acting for them, have received rent for property of respondents, acquired from Towne for at least two thousand dollars, half of which belongs to respondents; that if plaintiffs own any interest in the lands claimed, it is an undivided half interest, and that there now remains undisposed of four-fifths of said land which is in full possession and control of plaintiffs; that if respondents are liable for any amount to plaintiffs for lots sold, the same has been extinguished and compensated by taxes paid by defendants and the rents and revenues received by plaintiffs.

There was judgment for plaintiff as prayed for, except that each defendant was adjudged to pay two-fifths of the proceeds of the town lots disposed of by him with legal interest from judicial demand, instead of a solidary judgment with legal interest from date of sale.

Defendants, Stubbs, Waddill, Gordon, Ludeling and Mrs. Ames, appealed.

Plaintiffs ask that the judgment be amended as prayed for in the petition.

R. W. Burney died in the month of April, 1866. His widow, Fredonia Burney, qualified as natural tutrix to her minor children. An inventory of the succession was made on the 27th of April, 1866, and an undivided half interest in and to lots or fractional sections 11, 14 and 15, T. 16 N., R. 15 E., containing one thousand ninety-two and forty one-hundredths acres, valued at twenty dollars per acre, the half interest being ten thousand four hundred and twenty-five dollars, was placed thereon as the property of the succession, and

Ezra B. Towne was appointed and qualified as under-tutor on the same day the inventory was made.

In November, 1866, the natural tutrix, Mrs. Burney, died.

Ezra B. Towne, under-tutor, addressed a petition to the Thirteenth Judicial District Court for the parish of Madison, alleging the death of the tutrix, and asked that a family meeting be convoked to advise and deliberate upon the appointment of a tutor for the minors, and for deliberating generally upon the interests of the minors. The order for the family meeting was granted " to deliberate touching the interests of the minors generally, and particularly touching the appointment of a tutor."

On the 27th day of November, 1866, the family meeting assembled. They declined to recommend a tutor, but suggested inferentially the appointment of an administrator to the succession. This family meeting, among other things, advised, and which was not submitted to them in the order convoking the same, the acceptance of the proposition of J. J. Garrard, a creditor of the succession. This creditor presented to the meeting the account of Jas. J. Garrard & Co. for twenty-four thousand ninety-one dollars and three cents, together with the proposition " to take in payment for said account a sufficient part of the plantation known as the Burney (old) Home Place, at a fair valuation, same to be determined by appraisers appointed by both parties. It is also understood that we receive a good title to the land."

E. B. Towne, formerly under-tutor, applied for and obtained the administration of the succession of Burney, and qualified as such administrator on the 19th December, 1866. No new inventory was made, the inventory made under the appointment of tutor being adopted by him.

Under the writ issued in the case of Frank O. Woodman vs. James Teckell, Executor, Secs. 11 and 15, the undivided half of which was placed on the inventory as the property of the succession of Burney, was adjudicated to E. B. Towne, under-tutor of the minor children of Burney.

After he was appointed and qualified as the administrator of the succession of Burney, E. B. Towne, as such administrator, by private act, sold to J. J. Garrard, a creditor of said succession an undivided half interest in said Secs. 11 and 15, T. 16 N., R. 15 E., known as the Burney place, containing one thousand and twenty-four acres,

for the price of fifty dollars per acre, which was in fact a giving in payment the property for the debt of Garrard & Co. This sale was made in pursuance of the recommendation of the family meeting already referred to.

J. J. Garrard conveyed this undivided half interest to Mrs. L. V. S. Ames, one of the defendants.

This property, all of Secs. 11 and 15 in said township and range, was surveyed and laid off in streets, squares and lots in 1868. On the first day of May, 1869, for the price of one thousand dollars and the establishment of a railroad *terminus* thereon, Towne conveyed to defendant Ludeling his own undivided half interest in said property, laid off as above, the railroad square at the town of Delta, right of way through Sec. 15, the squares designated by odd numbers on the plat. One undivided fourth of Sec. 15, not laid off in squares, was also transferred to defendant Ludeling.

This sale was the consummation of a prior agreement between Towne and Ludeling.

On the 13th May, 1869, Towne, the administrator, alleging that J. J. Garrard was a creditor of the estate for twenty thousand dollars; that his claim had been submitted to a family meeting, who had advised the acceptance of the proposition heretofore referred to; that said debt remained unpaid, the recommendation of the family meeting not having been fully carried out; that in his opinion Secs. 11, 14, 15, T. 16 N., R. 15 E., though a large portion of the same is outside of the levee, could be sold for enough to pay all the debts owing by said estate, presented a petition to the District Court praying for a sale of said property to pay debts, and asking also for a new inventory and appraisement. Towne was parish judge, and recused; therefore he sought the jurisdiction of the District Court, which granted the order.

No new inventory or appraisement was made as prayed for, although the property had changed its character and become enhanced in value. It was, to a great extent, no longer a plantation, but had become a part of a proposed village or town, laid off into streets, squares and lots.

This petition was prepared and written by the defendant, Stubbs. The property was sold in block, without reference to its changed condition. The defendant, Ludeling, became the purchaser under the sale ordered by the court.

The answer of defendants shows that this sale was not for the purpose of paying the debts of the succession, as alleged in the petition for the order to sell, but that the application for the sale and the order obtained was "on the advice of respondent associates, and. for the sole purpose of perfecting their title and protecting the heirs of Burney from the inequitable, though apparently legal, claim of Woodman."

This "inequitable, though apparently legal, claim of Woodman" originated as follows:

In 1848 O. O. Woodman owned all of the property in dispute. Under a partnership agreement in that year he conveyed one-half of this property to Burney, with a stipulation that the half interest was to be reconveyed to Woodman on paying to Burney three thousand dollars. Woodman died in 1860. It does not appear that he paid the three thousand dollars and had the property reconveyed to. him. Prior to his death he was unfortunate in having an unfaithful wife. To defeat the claims of this wife the executor of Woodman obtained a decree to sell to Burney the interest of Woodman, deceased, in said property at private sale, and on the 27th January, 1860, title was made to Burney. This sale was simulated. Burney gave a counter letter to this effect. The act of sale was not recorded in Madison parish, where the property was situated, until these defendants put it on record, June 22, 1869, "for protection against Woodman's heirs."

The heirs of Woodman and the creditors of his succession in 1869 set up claim to the entire property—one-half on account of the counter letter, and the other half on payment of the three thousand dollars stipulated in the act of partnership between Burney and Woodman. The defendants, before recording the act of sale from Woodman's executor to Burney, June 27, 1860, had knowledge of the existence of the counter letter, although they state it was not exhibited to them.

In relation to the succession sale, at which Ludeling became the purchaser, defendants in their brief say: "The sale of 24th of June was provoked for the purpose of perfecting the title of Mrs. Ames, who had acquired the Garrard interest, and incidentally of the estate of Burney, from what was then believed to be the unjust attack of Woodman."

A creditor of Woodman instituted suit in the United States Court

of Mississippi for the property. Towne and the estate of Burney were made defendants, and after years of litigation the suit was dismissed.

The defendants combined with Towne and the estate of Burney, and although not parties to that suit vigorously defended the same which resulted in its dismissal.

### ANSWER OF DEFENDANT STUBBS.

In the answer of defendant Stubbs, it is recited that " respondent further shows that the heirs of Woodman, through one Stone, claiming to be a creditor, filed or presented some sort of a proceeding while the sheriff was proceeding to sell the property on the 25th of June, 1869, but the same was disregarded, and thereafter attempted through the forms of law in the State courts of Mississippi' and afterwards in the United States Court for Mississippi, to subject this property (and all claimed by or in the name of R. W. Burney at the date of his death) to their claims, and that your respondent with his associates, Mrs. Ames and E. B. Towne, were at great trouble and expense for counsel in defending said suits. That it was only after they had finally succeeded in defeating the claims and suits of the Woodman estate that some of the heirs of Burney then turned on their benefactor and friend, E. B. Towne, and ungratefully charged him with fraud, and respondent shows that the proceedings taken by Towne which resulted in the sale to J. T. Ludeling, 24th of June, 1869, not only were not for the purpose of injury to plaintiffs but for the purpose of perfecting title in him for plaintiffs and for respondent and his associates which had been recovered from and through Towne and for the purposes of protecting the interests of the heirs of Burney against the violent attacks of Woodman's estate and heirs, who had set up and were asserting claims to the whole property."

The turning against their benefactor alluded to in defendant's answer was the institution of a suit by the heirs of Burney against Towne, which is identical in the allegations in the petition with the one in the present suit. The present plaintiffs were then young children, one an infant and the other about ten years of age. It is this suit, and the fact that the minor heirs went into possession of the property, surrendered by Towne under a compromise with their

tutor and the major heirs, which is the ground of the defendants' pleas of *res judicata* and estoppel.

The changes in the banks of the Mississippi river made it necessary to select another *terminus* for the railroad. Before Ludeling made an agreement with Towne about locating the *terminus*, the depot and the building of the town of Delta at the *terminus*, the engineer of the road had made a survey of the locality and selected the point where the Burney property was situated. The answer admits that the sale of the undivided half of the property to Ludeling by Towne May 1, 1869, was the carrying out of a prior engagement made in the year 1868 between Towne, Garrard, Ludeling and associates by which Towne and Garrard bound themselves to Ludeling and associates to sell to them one undivided half of the property in Secs. 11 and 15, T. 16 N., R. 15 E., and the depot grounds and right of way, in consideration of the payment of one thousand dollars in money and the locating the *terminus* of the railroad on these lands, and the use of their influence to have the parish site moved there from the old town of Richmond. This agreement, they allege, they fully performed.

It is also admitted in the answer that Towne, at the time of this agreement, informed defendants that his purchase of the property at sheriff's sale should inure to the benefit of the heirs of Burney, and that it was his intention to transfer the property allotted to him in the division to them.

On the 9th November, 1870, Jno. T. Ludeling appeared before a notary public in Ouachita parish, the parish site, Monroe, being the domicile of the railroad company, and declared that in pursuance of an agreement made with Towne and others he caused a survey in the year 1868 of a large portion of the Towne plantation to be made and laid off into squares and town lots, and that he had a map prepared of the same, calling the town Delta, the same being recorded in the parish of Madison, 1st May, 1869; that he had acquired from Towne all the odd numbers in the squares on said plot, being divisions of Secs. 11 and 15, T. 16 N., R. 5 E., and one undivided fourth in all that part of said sections not laid off into squares, being one-half interest claimed by Towne in said property. In the act it was further stated that he had acquired said property at the succession sale of Burney, 25th June, 1869, and that he afterward made an agreement with Towne and Mrs. L. V. S. Ames, in writing, reserv-

ing to himself the odd numbered squares and the right of way and depot grounds for railroad purposes, and he agreed to transfer to Towne and Mrs. Ames the even numbered squares and an undivided half interest in that part of the property not laid off into squares, Mrs. Ames agreeing to transfer to Ludeling all her right and interest in the right of way and depot grounds and odd numbered squares and one-half of her undivided interest in the portion of said sections not laid off into squares. He further declared that he did not acquire said property only for himself, but for other parties also, the appearers, Gordon, Stubbs, Kline, Waddill, Ray, Baker, Oaks, Ames, McGuire and Bry; that the interest of each in the property is not equal. The shares were fixed at one hundred and forty and the property was partitioned according to the interest in it of each of said parties to the act. Towne received one-fourth, Mrs. Ames one-fourth, Ludeling and associates one-half.

The defendants offered in evidence contract and deed from P. J. Kennedy to John T. Ludeling, passed May 1, 1869, to show that the town of Delta embraced Secs. 1 and 2, T. 15, R. 15 E. This was objected to as *res inter alios.*

The objection was sustained and the defendants reserved a bill. It was claimed by defendants that in the sales of property many of them were of lots and squares in the Kennedy part of the town, which they were prepared to show. The evidence was irrelevant, as the several deeds will show what property was disposed of. If they do not show that the defendant sold property claimed by plaintiffs, the plaintiffs can not recover. It is upon the plaintiffs to prove that the lots sold or donated by defendants were the same as those claimed by them. It is not necessary, therefore, to show that other property formed a part of the town of Delta in order to determine the issues herein presented.

### RES JUDICATA AND ESTOPPEL.

A. T. Felt, tutor of plaintiffs, in 1874, with the other heirs of Burney, instituted suit in the parish court of Madison parish against E. B. Towne and John T. Ludeling, in which the same issues were presented as in the instant case.

This suit was compromised with said tutor and the heirs, then of age, and plaintiffs in said suit. Under this compromise the defendant, Towne, transferred to the heirs of Burney, through John Mc-

Donough and Tristram A. Thomas, husbands of two of the heirs, certain property in the town of Delta. The act of compromise is as follows:

"State of Louisiana, }
"Parish of Madison. }

"When I purchased the property known as the 'Burney property,' being lots or Secs. 11 and 15, I intended and said that said purchase should inure to the benefit of my old and dead friend, R. W. Burney. As administrator of his estate, I have paid all debts that have been presented to me, amounting to the sum of twenty thousand dollars or more. After doing this I find in my possession considerable property which I am morally bound to transfer to the children of R. W. Burney.

"Therefore this writing is to transfer and deliver to John A. McDonough and Tristram A. Thomas, for their heirs and for the other children of R. W. Burney, share and share alike, except that Mrs. Felt has already received about five thousand dollars, which she must account for, and which must be deducted from her share; all my interest and title and possession in all the lots of the town of Delta, La., and in all the lands comprised in Secs. 11 and 15 of T. 16, R. 15 E. of said parish and State, to them and their heirs forever, without any warranty except against myself and my heirs.

"The consideration of this transfer is an entire acquittal and release from all responsibility as administrator of the estate of R. W. Burney, and a written withdrawal of all charges of fraud or collusion against me and John T. Ludeling, to be filed in the Probate Court of Madison parish, in the suit numbered 700 on the docket of said court. The blocks Nos. 10, 12, 14 and 64, and three other block numbers not now known, but which have been sold by Mrs. Ames, are not included in this transfer.

"Done and signed this the 27th day of November, 1875.

"Witnesses.                           Signed.

"Geo. J. Bradfield,          E. B. Towne,
"J. W. Bruton.               John A. McDonough,
                             Tristram A. Thomas.

"Messrs. Jno. A. McDonough, Tristram A. Thomas and E. B. Towne acknowledged their signatures before me.

"Robert S. Belk,
"Deputy Recorder."

On the 23d December, 1875, Towne transferred to said heirs, in pursuance of said compromise, other property, in block No. 12, in Delta, and certain mortgage notes on lots in the town of Delta which he had sold.

On the 12th of February, 1880, the said John A. McDonough appeared before a notary and made the following statement and formal transfer to the heirs of Burney, to-wit:

"Whereas, Tristram Thomas and myself became the purchasers of certain property in the parish of Madison, La., for the benefit of the Burney heirs, as is shown by deeds on the 27th of November, 1875, and 23d of December, 1875, from E. B. Towne to us, duly recorded; and, whereas, we also became the purchasers, apparently in our own right, on the 18th of November, 1875, by deed from Frank P. Stubbs, of twenty acres of land, described in the deed of that date, yet it was well known that said purchase was the compromise of a lawsuit between the heirs and said Stubbs.

"I declare that said purchase was made for the benefit of all the heirs of the late R. W. Burney, and that they became the purchasers and have used and possessed the same, except Mrs. Lillie Felt, who was excluded. Therefore, I hereby disclaim any ownership in either of said purchases, and hereby transfer all the title I may have to said property to said heirs and their legal representatives forever."

But, in the meantime, on the 24th day of April, 1876, *after Anna V. Burney had become full age*, Mrs. Matilda Thomas, Miss Anna V. Burney (afterward Long) and Mrs. Almeda McDonough sold to Mrs. Lillie Felt, wife of A. T. Felt, lots 7, 8 and 9, in block 12, in Delta, conveying in the act "all and every right and interest of ownership, use and habitation that we, said transferrers, may or can have by virtue of inheritance from R. W. Burney and Mary F. Burney, and by virtue of transfers made by E. B. Towne to said J. A. McDonough and T. A. Thomas, in two deeds, dated respectively November 27 and December 23, 1875, or by any other right."

This act further provides that "this transfer and assignment is made to said Mrs. Felt as part of her interest in and to said succession of R. W. and M. F. Burney," "and is an assignment to her as part of the share due her in all the property held in common among said transferrers and transferee."

It is alleged by defendants that Mrs. Long, one of the plaintiffs,

was of full age when the act of 24th of April, 1876, was passed, and that she ratified and confirmed the compromise, and what had been done in relation to the Burney property when she was a minor, and that both plaintiffs went into possession of the property and enjoyed its revenues, and that they are, therefore, estopped from disputing said compromise, as they had accepted and ratified it. They also urge that said compromise had the authority of the " thing adjudged," under Art. 3078 of the Civil Code.

Whatever effect this compromise had as to the major heirs it could not bind plaintiffs, who were minors. There was no intervention of a family meeting who advised it. As to the minors, it was a nullity. Civil Code, Art. 3072; Graham, Tutrix, vs. Hester, 15 An. 148.

In the transfer from Towne to the heirs of Burney, it is recited that when he purchased at the sale of Woodman vs. Teckell, Executor, Secs. 11 and 15, in T. 16 N., R. 15 E., he said and intended that said purchase was for the benefit of the Burney heirs, and that after settling the debts of the succession of Burney he found himself in possession of considerable property which he was morally bound to transfer to them. From this declaration it is evident that Towne only transferred to them property of which they were the rightful owners from the date of said purchase by him. They went into possession of property which belonged to them. The compromise, so far as the minors were concerned, was a nullity. Property transferred to them under it, and which belonged to them, and which continued in their possession until after their majority, or even when transferred to them after their majority, can not be the means of estopping them from claiming other property belonging to them in the hands of the administrator, or other parties who acquired from him.

Towne's declaration was that he found himself in possession of considerable property belonging to the heirs of Burney after paying all debts. The heirs, whether of age or not, have the undoubted right to pursue him until all the property in his possession belonging to them shall be returned to them.

### WANT OF TENDER.

This plea is not discussed in defendant's brief. The pleadings and the facts in the case do not sustain it. There is no other evidence that the amount alleged to have been paid was ever received by the administrator, and that it inured to the benefit of the minors.

The prescription of one year, under Art. 3536, Civil Code, "for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offences or *quasi* offences," pleaded by defendants, applies to the violation of those rights which belong to every individual, such as the right to personal security, to liberty, to property, to reputation, to the services of one's children, and to the companionship of one's wife; and to the violation of those duties attached to every individual, the duty of not deceiving by false representations, of not prosecuting another maliciously, and of not using one's property so as to injure another. Underhill, Torts, 4.

The injuries from which damages spring are generally those from injuries to person, property or reputation, from deceit, slander and libel, malicious prosecution, conspiracy, assault and battery, false imprisonment, seduction, trespass, conversion, infringement of patents and trade marks, damage by animals, nuisance, negligence, offences.

This prescription, therefore, can only be applied to damages arising from the infringement of some right personal to the individual, or relating to his property, or the violation of some duty imposed by law. If these ingredients are not present it is not a *quasi* offence.

The decisions of this court have been in line with this interpretation of the article of the Code referred to—that is, there must have been some infringement of right either to the person or to the property of the plaintiff in order to make the prescription effective.

In the case of Burch vs. Willis, 21 An. 492, the plaintiff's ground of action was the conversion of fifty bales of cotton of the plaintiff by the defendant.

In Williams vs. Greiner, 20 An. 151, the plaintiff's action was based on a tort for the taking, without the consent of the owner, and appropriating personal property.

In Millspaugh vs. City 'of New Orleans, 20 An. 323, the plaintiff placed on the river bank a lot of stone ballast. He was required to move it in thirty days. The chairman of the Streets and Landings Committee consented that it might remain longer. Subsequently the chairman of said committee removed it to the city depot, and it was used by the city for paving purposes. The action was grounded

on the tort committed by the city in the wrongful appropriation and conversion of plaintiff's property.

In Wood vs. Harispe, 26 An. 511, plaintiff deposited cotton with one Parr. The defendant, without plaintiff's consent, demanded and got possession of said property, shipped and sold it and converted it to his own use. The court said: "If the possession of defendant was wrongful, as it is alleged to be, the property came into his hands by reason of an offence which he, through his agent, had committed."

In Gardner vs. Succession of Scherrer, 31 An. 527, the suit was for the recovery of damages, the alleged difference in the value of a piece of property which the defendant had received under a simulated title and screened from plaintiff's suit. The plaintiff was a creditor, and alleged that had not the property been placed beyond his reach it would have brought a sufficient sum to pay his debt. This was purely an action for damages, growing out of the wrongful act of defendant. It was not a suit for the return of the property, or in default thereof its value.

In Knoop, Hanneman & Co. vs. Blaffer *et als.*, 39 An. 23, the suit was against bank directors for the amount of a deposit received in *violation* of a statute, after a bank was in failing circumstances.

The petition alleged " by their tortious conduct, concealment and misstatements the said directors have made themselves liable unto them for the amount due them by said bank." It may be remarked that this case was decided on the principle that "whenever the law creates a right the violation of such right will be a tort, and whenever the law creates a duty the breach of such duty, coupled with consequent damages, will be a tort also." Underhill, Torts, 20; Cooley, Torts, 650; Addison, Torts, Secs. 53, 77.

In The City of New Orleans vs. Southern Bank, 31 An. 566, where the prescription of one year, applicable to *quasi* offences, was sustained, the remarks made in the case just referred to will apply. The bank was sued for a violation of a trust, in disposing of, contrary to statute, certain bonds deposited with it as the fiscal agent.

These cases are relied upon by the defendants in support of their plea of one year's prescription.

The only case referred to by defendants that would seem to sustain their plea is the case of Edwards Carter vs. Ballard, 20 An. 169. But an analysis of that case will show that it is in accord with the

cases upon which we have commented. The suit in that case was not for the property which had been converted by a simulated sale. There was no prayer for the sale to be declared null and the property returned. It was an action for money, for the value of the property held by the simulated title.

The court said: "The action *en declaration de simulation* might have been resorted to by the plaintiff for the largest part (more than nineteen-twentieths of the whole property), as that was in the possession of Ballard and of Mrs. Lillard, his alleged *particeps fraudis*, when this suit was brought, for the plaintiff says that a considerable portion of the lands, which he values at one hundred and thirty-two thousand dollars, was conveyed by Ballard to her without any consideration *as her part of the spoils and to seal her lips.*"

We do not think the court, in referring in this case to Nouret, Syndic, vs. Bollinger, 15 An. 293, placed the proper construction upon the language of the court in that case in referring to Art. 2315, C. C., to sustain the position that a plaintiff in the same suit can claim the property, or, in the event of its non-delivery, its value.

We think plaintiff's case comes under the ruling of Nouret vs. Bollinger. It is true that he does not ask for a judgment in the alternative. A part of the property had been sold. It was useless to sue for the specific property, which the records of the parish informed them had been sold. But they pray for the annulment of the title by which defendants claim they own the property, and for the price of that which had been sold by them. It is equivalent to a judgment in the alternative. There is no recognition of the sale; no consent that the property shall remain in the hands of defendants, and a prayer for its value, because of the wrongful act in selling, as was done in the case of Edwards vs. Ballard. In this case the simulated sale was not attacked. The property remained in the possession of defendants. Plaintiff sued for its value and alleged the simulated sale as a reason therefor.

It would most assuredly be an anomalous position to permit a suit for the annulment of a sale, and to deny the party plaintiff the right to recover its value, if not in possession of the defendant. And it would be more so to say that the action to annul is not prescribed, but that the plaintiff can not recover the price of the property disposed of because the action is prescribed. They go together. If the action to annul is prescribed the price can not be recovered, and

if the plaintiff's demand for the price is prescribed the action of nullity is useless.    Therefore in the action to annul, coupled with a demand for the price of the thing alienated, we do not think that the restitution demanded has any element of damages in it, and is not covered by the prescription of one year.

If the sale of the property is null and void as claimed by plaintiffs, from the moment that defendants, who as possessors in bad faith according to plaintiff's allegations, went into the possession they held and possessed it for the benefit of the heirs, and must account to them for it and its revenues, and if not in their possession, for the price received for it.    Badillo & Chauvin vs. Tio, 7 An. 487; Badillo *et al.* vs. Tio, 6 An. 129; Heirs of Wood vs. Nicholls. 31 An. 745.

The obligation of defendants to restore the thing, the fruits and revenues, or the price in case they have alienated it, results not from an offence or *quasi* offence, but from a *quasi* contract.    Civil Code, Arts. 2293, 2294.

The prescription of one year under Arts. 1987, 1994, Civil Code, has no application to the facts in this case, as this is not a revocatory action instituted by a creditor complaining of the sale of property to his prejudice, and the prescription of thirty years under Art. 3548, Civil Code, and ten years under Arts. 3474, 3478, Civil Code, depend upon the fact whether the defendants' title has been in good faith. In this suit the defendants' title is attacked, and if it be found good there will be no need of the plea of prescription to sustain their title.    If defective, the plea will not avail them.

The prescription of ten years under Art. 2221, Civil Code, commences only from the day the minors, who executed the act, become of age, and in case of error or deception from the day on which the violence has ceased, or the error or deception was discovered.    The facts here do not justify its application.

### PLAINTIFF'S TITLE.

One undivided half interest in the property in dispute was placed on the inventory in the succession of Burney.    J. J. Garrard & Co. held a claim against said succession for twenty thousand four hundred and nine dollars and three cents.    After the death of the tutrix a family meeting convoked on the application of Towne, then under-tutor, advised the acceptance of a proposition made for the settle-

ment of said account by Garrard & Co.  This proposition was that the succession should give in payment of said debt a sufficient part of the plantation known as the "Old Burney Home Place," at a valuation to be determined by appraisers appointed by both parties, the succession offering a good title to said property.  Towne, the under-tutor, was afterward appointed and qualified as administrator. He transferred to J. J. Garrard, a member of said firm, "to him individually, or any partnership in which he has or may have been interested," the undivided one-half interest in fractional Secs. 11 and 15, T. 16 N., R. 15 E.  The tracts contained one thousand and twenty-four acres, and in the deed were valued at fifty dollars per acre.

The consideration or price was the delivery of said account to the administrator and paying to him within twelve months the excess of the valuation of the property over the debt.  The amount of land conveyed was to be determined by a survey within thirty days.  The date of this transfer was 15th February, 1867.

On the 23d December, 1868, J. J. Garrard recited in the deed the transfer to him by Towne, sold the property to Mrs. L. V. S. Ames, of St. Louis, for cash, the price being twenty-two thousand six hundred dollars.  The administrator, Towne, recusing himself as parish judge, presented a petition to the Thirteenth Judicial District Court for the parish of Madison, in which he stated that the succession of Burney was largely indebted and recited the proceedings of the family meeting and alleged that the recommendations of said family meeting had never been fully carried out, and prayed for an order to sell said property to pay debts.  He stated in his petition that in his opinion the property known as the Burney tract, composed of Secs. 11, 14, 15, in T. 16 N., R. 15 E., though a large portion of the same is left outside of the levee, can be sold for enough to pay debts owing by said succession.  A new inventory and appraisement was also prayed for.  The order to sell was granted as prayed for.  At the succession sale John T. Ludeling became the purchaser for the price of twenty dollars per acre, eighteen thousand and fifty-four dollars and sixty cents.

The property was sold in globo, although it had been, as the statement of fact shows, divided into squares, lots and streets as a part of the town of Delta.  There was no appraisement of the property or new inventory made as prayed for and granted in the order.

It is admitted that this sale was for the purpose of ratifying and confirming the private sale previously made to Garrard by the administrator and to confirm Mrs. Ames' title to the property. It was not, therefore, a *bona fide* proceeding provoked to pay debts of the succession.

It requires no argument, nor the citation of authorities to show that the private sale of Towne to Garrard & Co. was an absolute nullity. This is virtually admitted by the pleadings of defendants. The account of Garrard & Co. was placed in the hands of Ludeling, and by him used in the payment of the price. He was not a *bona fide* holder of the claim and a creditor of the succession. While the forms of law were observed, it is evident that the order of sale was provoked only for the purpose of confirming, as it is alleged, the sale to Garrard, and the sale was so arranged that competition should be avoided and Ludeling became the only bidder. The entire proceeding was a fiction, and the sale to Ludeling null and void. Mrs. Ames, in all the acts of defendants, appears as the owner of said undivided half, prior to and after said sale, and in the partition of said property she received her portion. Her title to the same must therefore rest on the sale from Towne to Garrard.

The other one undivided half interest in said property was sold by Towne to Ludeling on the 1st of May, 1869. Towne purchased the same at the judicial sale of Frank O. Woodman vs. Teckell, Executor of Estate of O. O. Woodman. Woodman had mortgaged all of said property when the title was in him.

As the administrator of the succession of Burney he was only required to protect the interest of the succession in its title to one-half interest which belonged to said succession. As he could not restrict the mortgage to the one-half interest, he was therefore compelled to purchase the entire interest. We see no reason why, in thus protecting the succession, he should not unite his funds with those of the succession and purchase one-half interest for himself individually, restoring to the succession the other undivided interest on the inventory. But it appears from the declarations of Towne that he purchased the entire property for the heirs of Burney. There is no evidence that he paid the price of the adjudication to one-half the property out of his own funds. We must accept his declaration as true. This declaration was made to Ludeling and associates before they acquired any rights in the property, at the time the

agreement was about being entered into about the proposed town of Delta and the terminus of the railroad. Ludeling and associates then knew they were dealing with property belonging to minors.

The property was treated as the property of the succession by Towne, the administrator. In the application to sell property to pay debts, he described all this property as that of the succession of Burney. Ludeling also recognized it as succession property, as the petition had been prepared at the suggestion of himself and associates, and he appeared at the sale and purchased the property sold as the property of the succession. In the proceedings of Woodman's heirs and creditors to obtain the entire property as Woodman's, these defendants, from their admissions, defeated these heirs and creditors in the interest of the heirs of Burney and of Towne. When they were defending Towne's interest they were confirming the title of the heirs of Burney by defeating Woodman's interest, as Towne held the title for their benefit. But if Towne really intended to purchase for his own account, it was null and void. In his application for a monition, he says he was the adjudicatee of all the property. If this be a fact, the sale would, as stated, be null and void, as the effect of the monition, if sustained, would have been to confirm his title to all the property.

Teckell, executor of the estate of O. O. Woodman, filed an opposition to the monition, setting up various grounds for the nullity of the sale to Towne. The opposition was maintained and the sale declared null and void. The judgment was signed in 1870, but the pending proceedings was a notice to all the world and no rights could be acquired on the property adverse to the judgment to be rendered therein.

This judgment left the property in the hands of Towne, administrator, as the Burney succession was holding title to the undivided half interest claimed by Towne by sale from Teckell, administrator, to Burney 27th June, 1860.

To this sale Burney gave a counter letter, and the rights of the heirs and creditors of Woodman were based on it. The defendants caused Burney's title to be first placed on record, and then defeated the heirs and creditors of Woodman—thus leaving title to said property in the succession of Burney,

This undivided half, then, never passed from the succession of Burney, and it was and is still the owner of Secs. 1 and 15, T. 16 N., R. 15 E.

We will remark here that the agreement between Ludeling and associates and Towne relative to the location of the *terminus* of the railroad and the depot buildings on the property offered by Towne to the company, and to use their influence to have the parish site changed from the town of Richmond to the proposed town of Delta, was illegal, null and void.

The railroad corporation was a *quasi* public agent, and it was its duty, independent of any agreement to secure advantage to it, to establish its stations at points most convenient for the public interests. An agreement, therefore, by the corporation for a part of the land to establish its depots or stations at particular points is illegal. Fuller *et al.* vs. Dame, 18 Pick. 472, 481-3; Bestor *et al.* vs. Wathen *et al.*, 60 Ill. 138; Marsh vs. The Fairbury, Pontiac & Northwestern Railway Company *et al.*, 64 Ill. 414; Brown vs. Brown, 45 Mo. 414; Florida Central & P. R. R. Co. vs. Mayor, 13 So. Reporter, 103.

All agreements which tend to injure the public service are illegal. Any agreement, therefore, which contemplates the use of private influence to secure some desired legislation is null and void. Marshall vs. Baltimore & Ohio Railroad, 16 How. 314, 334; Trist vs. Child, 21 Wall. 441; Everson vs. Pitney, 40 N. J. 543. To change the parish site from the town of Richmond required legislative action on the part of the State and the police jury of the parish of Madison.

The plaintiffs have asked for an amendment of the judgment, so as to give a solidary judgment against the defendants, and interest from the date of each sale.

Obligations *in solido* are not presumed. They must be expressly stipulated, unless they take place of right by virtue of some provision of law. Civil Code, Art. 2095.

They generally spring from express contracts, or from the nature of the business conducted, such as commercial partnership, where each partner is obliged to do the same thing, or from *quasi* offences and offences.

The obligation of defendants is not solidary from any contract, or from any provision of law, or from a *quasi* offence or offence.

Joint purchasers of property, unless there is an express stipulation to that effect, can not be held liable *in solido* for the purchase price of the property. Weld vs. Peters *et al.*, 1 An. 432; Scott's Executrix vs. Gorton's Executor, 13 La. 447; Kohn vs. Short, 18 An. 291; Thomas vs. Scott, 3 Rob. 256.

Heirs of Burney vs. Ludeling et als.

In the partition between Ludeling and associates and Towne, the map of the town of Delta served as a basis for the description of the property. The town of Delta was composed of the Burney and Kennedy additions, both laid off into lots and blocks designated by numbers. The lots and blocks disposed of by defendants are designated only by the number of the lot or block. It is therefore practically impossible, from the evidence before us, to ascertain whether the lots and block disposed of were in the Burney or Kennedy addition. The plaintiff not having identified the property disposed of, can not, in this suit, obtain a judgment for the price.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed as to all the property acquired from the Burney estate and remaining in the possession of defendants. In all other respects the judgment is annulled, avoided and reversed; and it is further ordered that in reference to all the property acquired from the Burney estate and disposed of by defendants, there be judgment as of non-suit, reserving to plaintiffs all legal rights against defendants for the recovery of the price of said property in future proceedings.

### ON APPLICATION FOR REHEARING.

We have carefully again examined the record in this case, and have been confirmed in the correctness of our views as expressed in the opinion. We therefore adhere to our views heretofore expressed, and to the decree, with this modification. We think the decree, instead of dismissing plaintiff's action, as to the property not identified and sold by appellants, should have been one remanding the case in order to enable them to identify the property sold by the defendants, appellants, and which they acquired from the Burney estate.

It is therefore ordered, adjudged and decreed that the decree heretofore rendered in this case be amended so as to set aside the decree dismissing as of non-suit the demand of plaintiffs for the proceeds of the sale of his property sold by appellants, and which they acquired from the Burney estate and failed to identify, and it is now ordered that the case be remanded for the sole purpose of allowing plaintiffs to introduce proof as to the identity of the property sold by appellants, and which it is alleged was acquired from the Burney estate by them.

In other respects the original decree to remain undisturbed.

Rehearing refused.