## No. 12,777.

### WILLIAM DREWS ET ALS. VS. FRANK B. WILLIAMS.

*Enjoining a Member of a Partnership.*—The injunction against a partner of a commercial firm had the effect of enjoining the partnership.

The partnership, though not made a party defendant, save to the extent that the partner enjoined may have represented the firm, had a right of action to recover damages occasioned by the injunction.

*Prescription.*—The date the injunction was sued out is not the date from which prescription of claims for damages caused by continuing acts begins to run. The prescription begins to run from the time the damage was committed by the continuing acts, and not from the date of the injunction.

*On the Merits—Costs of "Float" of Saw-logs and Cost of "Pull-boating."*—The difference in the costs of floating "saw-logs" in the swamp in shallow water and "pull-boating" them was inconsiderable. The amount was not shown with any degree of certainty.

*Trees Deadened—Damages therefor.*—The sap-wood of a tree circled and deadened loses value after a time. The injunction prevented their removal after they had been deadened, and in consequence, after years, caused loss in value. The sap rot is deducted in commerce.

After having considered the items of damages, the court reduced by one-half the
amount allowed by the judgment of the District Court.

APPEAL from the Twenty-fourth Judicial District Court for the Parish of St. Mary.   *Allen, J.*

*Edward Simon* and *Branch K. Miller* for Plaintiffs, Appellants.

*D. Caffery & Son* for Defendant, Appellee.

Argued and submitted May 3, 1898.
Opinion handed down May 16, 1898.
Rehearing refused June 28, 1898.

The opinion of the court was delivered by

BREAUX, J.   Plaintiffs sued the defendant to recover damages growing out of an injunction which was dissolved on the ground that it had been illegally granted on defendant's application.

The defendant Williams, in March, 1893, brought suit against the plaintiff, Gus Drews, in the District Court for the parish of St. Mary, claiming swamp lands described in his petition.   Drews reconvened and obtained a recognition of his title as owner of the land.

About the time that Williams brought suit in St. Mary parish for these lands, he obtained an injunction from the District Court of Assumption, enjoining Gus Drews and his employees from trespassing upon the lands of which he claimed ownership.   These lands were situated in Assumption.   Gus Drews was a resident of the parish of St. Mary, where he was sued.   Williams allowed the injunction to remain in force some time after it had been decided that he was not the owner of the lands.

Drews, in May, 1896, some time after he had obtained a judgment in the parish of St. Mary, recognizing his title, proceeded contradictorily with defendant Williams, and obtained a judgment dissolving the injunction and dismissing the suit brought in the parish of Assumption.

The suit now before us for decision was brought by the commercial firm of Drews & Son, of which William Drews and Gus Drews are

the members, against Williams, by whom Gus Drews, the owner of the lands, had been enjoined as before stated. It appears that William Drews owned a saw-mill, and that Gus Drews supplied the mill with saw-logs. The operations in the swamps (of which Gus Drews was the owner) and at the mill was carried on for the common benefit of the partners. They were under an agreement between father and son; partners in so far as related to the trees on the land.

For the purpose of supplying the mill (in accordance with their contract of partnership) with saw-logs, Gus Drews had made provision to cut down and remove a number of trees from the swamps to the mill of one of the partners (William Drews), operated as before stated.

He was enjoined, we have just stated, from cutting down and removing the trees, and to that extent the partnership was deprived of whatever profit might have been made if Gus Drews, one of the partners, had not been enjoined.

In his defence to the demand for damges growing out of the injunction suit the defendant, Williams, pleaded the exception of no cause of action, and in the alternative he pleaded a general denial.

The defendant also pleaded the prescription of one year.

In support of his exception of no cause of action counsel urged that the defendant in the injunction suit was Gus Drews, and that plaintiff, William Drews & Son, a partnership, is a body distinct from the members of the firm; that Gus Drews alone had been enjoined, and that it was incumbent upon him, and not the partnership of William Drews & Son, of which Gus Drews was a member, to comply with the injunction.

In support of the second ground of defence (the plea of prescription) he contended that the prescription began to run from the time that the defendant was prevented from cutting and removing his logs, or, if not from that time, from December 2, 1895, the date the injunction was dissolved by the effect of the judgment rendered in favor of Drews against Williams, recognizing the former as the owner of the land from which he had sought to remove trees when enjoined as before stated.

Passing to a statement of the facts on the merits of the case it appears that a number of cypress trees that Drews & Son intended to cut and float on the land of Gus Drews had been deadened.

The plaintiff alleges, substantially, that there was a float in 1893; and that they would, had they not been prevented by the injunction, have that year floated a large number of trees; that the cost of floating is one dollar and twenty-five cents a thousand, and even less, while the cost of "pull-boating," a means of getting saw-logs, when there is no float, is four dollars a thousand. The evidence is conflicting; the witnesses disagree in their statements—to float timber in four and five feet of water costs, all say, about one dollar and twenty-five cents. In shallow water it costs much more. Some testify that it costs even as much as three dollars a thousand. On the other hand the "pull-boating" work may vary materially. Some witnesses say it costs as much as four dollars and fifty cents a thousand, and others less than three dollars a thousand.

It appears that during the time that the injunction was being litigated, these trees, because of the rotting of the sap, caused by the "deadening," had lost value, which plaintiff claimed amounted to six hundred dollars. The evidence disclosed that about four hundred trees were "deadened" in January, February and March of the year 1893. That timber "deadened" when the sap is up in winter will resist sap rotting better than when the sap is down in the spring and summer, that is, when it is below the circular incision made to kill the tree.

In the former case the evidence is conflicting; one and two years was the time fixed within which the tree will not begin to sap rot; in the latter case three and four years. The amount deducted for sap rot varies; the largest deducted being, it is said, one quarter, and even a third of the value of the trees. In addition plaintiffs aver that before the injunction was issued plaintiffs made "trails," pathways and other preparations for the expected removal of the timber. That the injunction had caused this work to be useless, constituting, plaintiff contends, a six hundred dollar item of damages. Another item claimed, in amount five hundred dollars, was for camps established in the swamps where it was proposed to work, and a "pull-boat" taken to the place, the use of which was prevented by the injunction. Other items of damages were claimed, amounting in all to six thousand six hundred and seventy-five dollars.

The judgment of the District Court overruled the exceptions; rejected all of plaintiff's demands, save the items constituting damages to the amount of six hundred dollars.

From this judgment the defendant appealed

### PLEA OF NO CAUSE OF ACTION.

The exception of no cause of action covers the position set forth by the defendant that plaintiff here is a different person in law from Gus Drews, defendant in the injunction, and that the partnership had no right of action for damages, if any grew out of the suit enjoining Gus Drews, and which did not enjoin the partnership.

It is true as asserted by the defendant that in his suit, in which he in Assumption parish enjoined Gus Drews from removing trees, he did not in name enjoin the partnership. None the less, in our judgment, his injunction must have been depended upon to prevent the defendant in the injunction suit and his firm from cutting down and removing the timber from the lands he claimed as his, and upon which he asserted, in his suits against Gus Drews, that he Drews was trespassing.

It can not be denied, if the defendant Drews in the injunction had attempted to violate the injunction, plaintiff Williams would have had the right to have him brought up before the court for contempt, and had he urged in his defence that he was not a trespasser and was not in contempt because there was a partnership growing out of an agreement between him and his son, we do not think that the court would have sustained the plea. We think he would have been considered in contempt personally and as a partner.

The plaintiff in injunction and the defendant here is not in a better position. To the end of minimizing the damages he can not sustain a position which the defendant in the injunction suit would not have been able to sustain. The defence here has not more grounds than would have had Drews in answer to proceedings for contempt had he violated the injunction.

In our view the rights and liabilities of the members of the plaintiff commercial partnership were the same as the rights and liabilities of the partnership in matter of the trespass alleged. The injunction addressed to one of the partners had the effect of enjoining the partnership. If it had the effect of enjoining one of the members of the commercial partnership it necessarily enjoined both. The decisions to which our attention was invited do not establish a rule applying in every case involving partnership rights and liabilities. We are not of opinion that always and in every case the firm a is legal entity, separate and distinct from its members as contended by the defendant.

From Lindley on Partnerships, American Edition, p. 6, we quote: "With partnerships the case is otherwise; the members of these do not form a collective whole, distinct from the individuals composing it; nor are they collectively endowed with any capacity of acquiring rights or incurring obligations. The rights and liabilities of a partnership are the rights and liabilities of the partners, and are enforceable by and against them individually. *Si quid societati debetur singulis debetur et quod debet societas singuli debent.*"

In cases such as the one before us, we think that the right and liabilities of the partner enjoined involved the right and liabilities of the firm. It follows, if the firm be damaged by the injunction, the firm had a right of action. "The violation of the spirit, though the strict letter of the injunction may not have been disobeyed, is a disregard of the injunction." High on Injunction, Sec. 1444.

This brings us to the

### PLEA OF PRESCRIPTION.

The action is direct for the alleged injury, and is not an action on the injunction bond. The question relates to the prescription of one year. The action was brought for an alleged *quasi*-offence resulting in injury. The time when the prescription commenced to run is the controverted question here. We have seen that the writ was issued in March, 1893.

The defendant in injunction was continually prevented from removing the trees from the time it was issued until it was dissolved. In our opinion he is entitled to damages for deterioration of the value of the trees circled and deadened. This damage to the trees has no date during the injunction from which to determine prescription should run.

If there was injury to the trees it increased as time elapsed. There were other losses incurred of a continuing nature. The plaintiff had established lumbermen's camps, which he lost because prohibited from removing them. It is not shown when the loss became known. As we take it, they were on the grounds when the injunction was issued, and were not on the grounds when the injunction was dissolved. It devolved on the defendant, by whom the plea of prescription was interposed, to show when the camp was destroyed or lost in order to sustain his plea. Prescription runs from the day the damage was sustained (C. C. 3502), but the pleader

must prove that the damages were incurred the year preceding the institution of the suit. De Lizardi vs. The New Orleans Canal and Banking Company, 25 An. 416

The writ was dissolved only in May, 1896. Prior to that time plaintiff in injunction took no steps to have it dissolved. The fact that the petitory action had been decided in favor of the defendant on his reconventional demand did not render it less imperative on the part of plaintiff in injunction to discontinue his injunction suit and to have the injunction dismissed. He had invoked the machinery of justice to maintain a right and possession; it was for him to actively abandon the proceeding and not for the defendant in injunction to assume that he was no longer commanded not to cut and remove the trees.

We take up the merits for determination.

The advantages of a " float " is made apparent, it is true, but it is not made evident that during the high water season of 1893, the " float " was ample enough to have been much less expensive than " pull-boating " the saw-logs. The difference in costs between the two is not established with certainty. Moreover, the loss incurred by plaintiff was not shown. It may be that the delay resulted in a benefit instead of an injury, but be that as it may, the injury, if there was injury, we infer from the record, was not considerable. It only resulted in delay without injury.

The second item of damages claimed was caused, it was alleged, by the " sap-rotting " of the trees which had been deadened or circled in expectation of a " float."

The evidence discloses that trees circled in winter resist the decay longer than those circled in summer. The former resist the decay three or four years, the latter only a year or two, it appears.

The trees of plaintiff were deadened in January, February and March. In the latter month the sap (sevre) is already active in its movements. If the sap-wood (aubier in French) be severed at that time (March) it stands to reason that the sap-wood will decay at an earlier date than in winter when the tree is not elaborating its sap and nature is at rest. We are not informed of the probable number of trees deadened in any particular month. The evidence discloses that usually one-fourth and sometimes one-third of the value of the tree is deducted after the sap has rotted or decayed.

The prescription pleaded does not apply to the whole claim. Trees

that resisted the sap-rot four years were not injured more than one year prior to the institution of defendant's suit.

The next item was for cutting roads and trailing. They, the roads and trails, it appears, were not completely destroyed and can be re-stored at no great cost. We have also considered the other items of damages. Plaintiffs have met with some damage, nothing as com-pared with the amount claimed and not as much as allowed by our learned brother of the District Court.

We think the sum of three hundred dollars is compensation enough for all damages.

It is therefore ordered, adjudged and decreed that the amount of the judgment appealed from be amended by reducing the amount of the judgment from six hundred dollars to three hundred dollars. As amended the judgment appealed from is affirmed at appellee's costs.

### ON APPLICATION FOR A REHEARING.

Appellants in their application for a rehearing aver that there is absence of any appeal by the defendant and of a prayer here for the amendment of the judgment.

Our decision having reduced the amount of the judgment of the District Court, we sought (after the application for a rehearing had been filed) for an answer by appellee praying for an amendment of the judgment. We found no answer.

We, as relates to an appeal by defendant, found a bond of appeal duly signed, but it is not supported by an order of appeal.

A bond of appeal without an order of appeal can not be of any effect.

This being the case, we are constrained to change to some extent the conclusion at which we arrived in our original opinion.

The law in this particular is controlling. No amendment reduc-ing the amount of the judgment is permissible.

This is so clear that the amendment can be made without granting more than a pro forma rehearing.

The amount involved is small and the question plain.

It is therefore ordered, adjudged and decreed that our original decree be amended, and that the amount now allowed is six hun-dred dollars with interest, and that the judgment of the District Court is in every respect affirmed. And that all costs of appeal be paid by appellants; in every other particular the rehearing applied for by appellants is refused.