(83 South. 23)

No. 22104.

OLIVIER et al. v. MAJORS.

(June 30, 1919. Rehearing Denied Oct. 14, 1919.)

*(Syllabus by Editorial Staff.)*

FRAUDULENT CONVEYANCES ☞182(1)—CREDITORS CANNOT RECOVER FOR DEPRECIATION IN VALUE FROM FRAUDULENT PURCHASER.

Claimed fraudulent purchaser of bank stock from a debtor *held* not liable to the creditors for a loss to them resulting from a decline in value of the stock during suit which they brought to have sale declared annulled as fraudulent, or to have it revoked as a fraudulent conveyance, which suit the purchaser was entitled to resist.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Joseph G. Olivier and others against J. A. Majors. From judgment for plaintiffs, defendant appeals. Judgment annulled, plaintiffs' demand rejected, and their suit dismissed.

Howe, Fenner, Spencer & Cocke, Burt W. Henry, and A. W. Cooper, all of New Orleans, for appellant.

Cage, Baldwin & Crabites and Sterling Parkerson, all of New Orleans, for appellees.

O'NIELL, J. Defendant appeals from a judgment for $8,370.91 damages for an alleged tort. The wrong complained of was a fraudulent purchase by defendant of 158 shares of bank stock, from one T. J. Majors, who was then a debtor of the plaintiffs in this suit. Plaintiffs' loss resulted from a decline in value of the bank stock during the litigation in which they sued to have the sale declared null as a simulation or to have it revoked as a fraudulent conveyance. The proceeds of the sheriff's sale of the stock, at the end of the litigation, left a deficit of $8,370.91 due on plaintiffs' judgment; whereas, the value of the stock on the exchange, at the time plaintiffs obtained judgment against T. J. Majors and issued a writ of fi. fa., was such that the judgment would have been satisfied in full if the stock had been seized and sold then.

Appellant relies upon the doctrine announced in Gardiner v. Succession of Scherer, 31 La. Ann. 527 (cited with approval in Heirs of Burney v. Ludeling, 47 La. Ann. 90, 16 South. 507), viz.:

"Where a simulated sale has been set aside at the suit of a creditor of the pretended vendor, the creditor cannot hold the pretended vendee in damages on account of a depreciation of the property, arising after the pretended sale, when he fails to show that the simulated conveyance caused the depreciation."

In the case before us, the sale of the bank stock was adjudged by the district court to be a mere simulation and therefore absolutely null; but, on appeal, the sale was adjudged not a simulation but a conveyance made in fraud of the rights of the complaining creditors, and the judgment of the district court was therefore amended by avoiding and setting aside the sale only in so far as the plaintiffs were concerned. See Olivier, Voorhies & Lowrey v. Majors et al., 133 La. 764, 63 South. 323, and Newman Bros. v. Majors et al., 133 La. 780, 63 South. 328.

The members of the firm of Newman Bros. (in liquidation) are plaintiffs in a companion suit, entitled Claude S. Newman et al. v. J. A. Majors, 83 South. 25,[1] No. 22105 of the docket of this court, founded upon substantially the same facts, and presenting the same issues that are presented in this case.

There is no element in the case before us that exempts it from the rule applied to Gardiner v. Succession of Scherer. On the contrary, this case is more favorable to the defendant than was Scherer's Case; for the defendant here was, by the decree of this court, justified in defending his title to the property, in the action en declaration de simulation, though he failed in his defense against the revocatory action.

The decline in value of the bank stock took place while defendant was exercising his right to defend his title to the stock. It is conceded, of course, that the decline in value of the stock was not caused by any act of commission or omission on the part of defendant. It was not a natural or probable consequence of defendant's resisting the revocatory action and thereby delaying plaintiffs in their right to have the stock seized and sold to satisfy their judgment against T. J. Majors. That it was not deemed probable that the stock would decline in value is demonstrated by the fact that the plaintiffs themselves were not anxious that the stock should be sold and the proceeds held subject to their revocatory action. The stock was held by the German-American National Bank, in pledge to secure the payment of a promissory note signed by defendant, J. A. Majors. While the revocatory action was pending, that is, four months before the judgment in that suit became final, the German-American National Bank proposed to sell the stock to satisfy the note of J. A. Majors. But plain-

tiffs' attorneys persuaded the bank to retain the stock, until it was seized and sold by the sheriff. If the bank had made the sale, the excess of proceeds, over and above the amount due to the bank on the note of J. A. Majors, would have been retained by the bank, subject to the revocatory action; because plaintiffs had obtained a writ of injunction, enjoining the bank to retain such excess of proceeds in the event the bank should exercise its right to sell the stock under the contract of pledge. The value of the stock declined $3,555 after plaintiffs' attorneys persuaded the bank not to sell the stock, and before it was sold by the sheriff. In addition to that loss, there was the cost of the sheriff's sale, which was $955.82 more than a broker's sale would have cost. As an offset to that loss, however, a dividend amounting to $1,270.40 was declared on the stock, after the German-American National Bank was persuaded not to sell it. The dividend was seized by the plaintiffs in this and the Newman suit, and the amount was divided pro rata between the plaintiffs in the two suits. Therefore, $3,240.42 of the loss sustained by the plaintiffs in this and the Newman suit was due to their own belief that the bank stock would not decline in value during the litigation over the title.

The doctrine of the decision in Gardiner v. Succession of Scherer is that there is no tort unless the loss suffered by the plaintiff was caused by a wrong on the part of the defendant. If it was the exercise of a legal right on the part of the defendant that resulted in injury to the plaintiff, it is damnum absque injuria. The right to defend a lawsuit, and to make as efficient a defense as the nature of the case may reasonably demand, cannot be abridged by the courts, for fear of injury to the plaintiff, without endangering fairness and safety in the administration of justice. See Cooley on Torts, pp. 62 and 81, and Sutherland on Damages

---

[1] Post, p 822.

(3d Ed.) vol. 1, p. 7. The rule in that respect is the same in Louisiana as at common law; for, in Civ. Code, art. 2315, declaring that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it, the controlling word is "fault."

Looking beyond the point that the defense of the revocatory action was the exercise of a legal right of the defendant, and taking the view that it was a continuation of the original wrongful act of buying the bank stock from the insolvent debtor of, the plaintiffs, it must be observed that the decline in value of the stock during the litigation was not a natural or probable consequence of the defending and prolonging of the revocatory action. A "natural consequence" of an act is one that results because of some natural law of cause and effect. A "probable consequence" is one that is more likely to happen than not to happen. The decline in value of the bank stock was not caused by the delay—was not a natural consequence of it. Nor was the decline in value a probable consequence—one that was more likely to occur than not to occur. It was not a danger that should have been anticipated and guarded against; for, if it had been, the plaintiffs would have availed themselves of the opportunity to have the stock sold and the net proceeds retained by the German-American National Bank.

It is true the loss that resulted from the decline in value of the stock would not have been suffered by plaintiffs if defendant had not resisted the revocatory action. But the test of liability in an action for tort is not that the loss would not have been suffered by the plaintiff if the defendant had not committed the wrong complained of. The defendant is not liable in such case unless the injurious consequence of his act was one that a person of ordinary prudence should have foreseen as a probable consequence of the act. See Sutherland on Damages (3d Ed.) vol. 1, p. 102, § 34. How can the plaintiffs here contend that the defendant should have foreseen and guarded against the danger of a decline in value of the bank stock, when they themselves did not foresee the danger and would not guard against it when the opportunity was given them?

We do not find anything in the expressions of opinion cited by plaintiffs' counsel that conflicts with the views we have expressed. The doctrine stated on pages 100 and 101 of the Third edition of Cooley on Torts merely distinguishes the case where an injury has resulted to the plaintiff from a wrongful act of the defendant but only because of an intervening wrongful act of another person, from the case where the defendant's wrongful act was one that would naturally and in the ordinary course of events produce the injury and the injury did result in consequence of some intervening cause that was not wrongful.

The illustration taken from the case of Atchison, Topeka & Santa Fé Railroad Co. v. Stanford, 12 Kan. 354, 15 Am. Rep. 362, is not appropriate, because, in the case cited, the intervening cause of the damage was a highly probable danger, and the original wrong was therefore held to have been the proximate cause of the damage. Two fires that were negligently started by defendant on lands that did not belong to plaintiff were increased by the wind until they united and spread to plaintiff's property and there did the damage, 3½ miles away from the place where the fires were started. The ruling was that, in law, though not in point of time or sequence, the proximate cause of the damage to plaintiff's property was not the wind but the starting of the fires. The ruling was the same, on a similar state of facts, in the Wisconsin case, Kellogg v. Chicago & North-

western Railway Co., 26 Wis. 223, 7 Am. Rep. 69; and the decision is therefore not applicable to the case before us.

In the South Carolina case, Harrison v. Berkley, 1 Strob. 525, 47 Am. Dec. 578, the ruling was that one who sold intoxicating liquor to a slave, causing him to become intoxicated and to die from exposure, was liable to the owner for the value of the slave, because, said the court:

"It may well be said (speaking in the language of everyday life, which attempts no philosophical analysis) that the exposure was the immediate effect of the intoxication, and that the two produced the death."

That decision is not applicable here, because, in the case before us, the decline in value of the bank stock was not an effect produced by an act of the defendant.

In Drews v. Williams, 50 La. Ann. 579, 23 South. 897, this court allowed as damages for an illegal writ of injunction obtained by defendant the loss which plaintiff suffered by depreciation of his cypress timber, which he had deadened when he was enjoined not to fell and remove the trees. The case before us is different in several aspects. In the case referred to, the court found that it was a fact well known that cypress timber would depreciate in sap-rot when deadened unless felled at the proper time and converted into lumber. Hence the ruling was that the loss in sap-rot was the natural and probable result of the delay caused by the illegal writ of injunction. It could not be said that plaintiff's loss, in that case, was damnum absque injuria, on the theory that defendant's having obtained a writ of injunction, in the original suit in which he claimed title to the timber, was an exercise of his legal right to institute and prosecute the suit. Because, as the statutes requiring a bond for obtaining an injunction or other conservatory writ impose the condition that the plaintiff or his surety shall pay all damages that the defendant shall have incurred if it be determined that the writ should not have issued, it may be said that the allowance of damages in such case is authorized by statute.

We deem it unnecessary to give our analysis of any other of the decisions relied upon by plaintiffs, on the question of proximate or remote cause; for none of them seems applicable to the case before us.

The judgment appealed from is annulled, and plaintiffs' demand is rejected and their suit is dismissed at their cost.

PROVOSTY, J., concurs in decree.