ander Scott, be so amended as to recognize her (petitioner or opponent) as the true and lawful owner of the one-half of the price of the real estate above referred to.

On the 30th day of October, 1907, this final account of Malvina Scott was approved and homologated in so far as not opposed.

The opponent was a party to the proceedings at the time that the account was homologated in so far as not opposed. She did not offer the least objection.

On the 13th day of January, 1908, that part of the account not previously approved and homologated was called up for action by the court.

The evidence was heard, and the district court rejected the demand of opponent, Epps, and dismissed her opposition.

The opponent appealed from the judgment. First as relates to jurisdiction.

The court is without jurisdiction.

The total inventory was $2,023.50. The property sold for about $2,200.

The opponent asked to be recognized as the owner "of the undivided half of the proceeds of the property," to wit, "the sum of $1,100."

The amount is one sum. There is no question about distributing a fund.

The issue is directly presented for the last-mentioned sum of $1,100.

This is not all.

The administratrix filed a final account of her administration. The costs and the debts of the succession according to this account amounted to the sum of $1,125.94.

The account, we have seen, was homologated in so far as not opposed. The opponent was a party to the proceedings when the account was homologated so far as not opposed. Without opposition the sum was reduced to an amount less than $2,000. From any point of view, the amount in contestation is not within the jurisdiction of this court.

The cause is ordered transferred to the Court of Appeal in order that the Court of Appeal, parish of Orleans, may proceed with the same in the same manner as if it had been appealed to that court originally.

It is ordered, adjudged, and decreed that due transfer of the cause be thus made, provided that before said transfer is made and within 10 days after this decision and decree will have been handed down, the appellant or her attorney of record shall make oath that her appeal was not made for the purpose of delay.

---

(46 South. 884.)

No. 16,772.

LOUISIANA RY. & NAVIGATION CO. v. RAILROAD COMMISSION OF LOUISIANA.

(January 9, 1908.     On Rehearing, May 25, 1908.)

1. RAILROADS—LOCATION OF DEPOTS—POWER OF RAILROAD COMMISSION.

The Railroad Commission possessed the power it exercised by virtue of the following language of article 284 of the Constitution: "The power and authority to govern and regulate railroads; to correct abuses and to require railroads to build and maintain suitable depots, switches and appurtenances whenever the same are reasonably necessary at stations."

2. SAME.

The plaintiff had settled that it would establish a station within the limits of the Gonzales settlement. It was within the power of the Commission to select the place on which to build the depot.

3. SAME.

A difference had arisen between the public, represented by a very large majority of the community and the railroad company as to where the depot should be located. After having investigated the facts, heard the evidence, and visited the ground, the Railroad Commission decided that the site should be at the place deemed the most convenient for the shippers and the traveling public.

4. SAME—REVIEW BY COURTS.

Where, on appeal, it does not clearly appear wherein an error has been committed, the finding of the Railroad Commission will be permitted to stand.

5. SAME—ORDER TO BUILD DEPOT—DEFINITENESS.

The plaintiff is authorized under the terms of the order to fix the situs for the depot with-

in the limits designated by the order at the place most convenient to the plaintiff.

Monroe, J., dissenting.

### On Rehearing.

**6. Same.**

The question of the depot was in great part, as to the situs of this depot, left to the judgment of the Railroad Commission.

It was selected without earnest objection.

**7. Same.**

Later the plaintiff and appellant, through some of its officers, expressed preference for another site.

*Held*, that a depot being for the accommodation of the public, the Commission, particularly considering the facts, had the authority to make the order it has regarding this site.

Monroe and Provosty, JJ., dissenting.

(Syllabus by the Court.)

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; Harney Felix Brunot, Judge.

Action by the Louisiana Railway & Navigation Company against the Railroad Commission of Louisiana. Judgment for defendant and plaintiff appeals. Affirmed.

Laycock & Beale and Wise, Randolph & Rendall, for appellant. Walter Guion, Atty. Gen. (Richard McCall McCulloh, of counsel), for appellee.

BREAUX, C. J. Plaintiff asked the court to annul an order of the Railroad Commission, which commands it to construct and maintain a depot at New River in the parish of Ascension.

After having personally inspected the premises, the Commission, by the order which the plaintiff seeks to have annulled, directed the plaintiff to erect a depot at the settlement known as "Gonzales" on the west of New River upon the site selected by petitioners, residing near Gonzales, who addressed themselves to the Commission to have a depot built at the place just stated. To copy from the order:

"To build a standard passenger and freight depot within ninety days from this order, with all necessary appurtenances, and to place an agent in charge of same; the location of said depot to be at the most convenient point for shippers west and south of New River, upon the site selected by petitioners."

This order is dated June 12, 1906.

The line of plaintiff's railroad is laid from the city of Shreveport to the city of New Orleans. It runs through sections 17, 20, 27, 28, and 34, township 9 S., range 5 E.

Plaintiff (railroad company) selected for a station a place in the east half of section 20, at which it proposed to build a freight and passenger depot, and construct a needful siding house and a Y track.

Plaintiff seriously objects to locating a station and depot at or near the town of Gonzales. The objections are: The indefiniteness of the Commission's order; its failure to fix with certainty the location of the depot; its unreasonableness; want of authority in the Commission to issue the order. It denies that the defendant Commission can select and establish stations along its railway and require depots to be built.

The members of the Commission take a different view of the matter. From personal inspection they found that there is a large settlement at Gonzales. In the petition addressed to the Commission the residents at Gonzales took occasion to strongly express themselves against a depot established at the place selected by plaintiff. These petitioners asked the Commission to enter an order requiring the plaintiff to build a depot at the northeast corner of the west half of the northwest quarter in section 28 of the township before mentioned, south of New River, at the most convenient point.

After a hearing of all interests concerned, and after a personal examination of the site, the members of the defendant Commission granted the order attacked by plaintiff.

The defendant's contention is that the order was reasonable, absolutely just, and sufficiently definite; that a depot at Gonzales would be as useful and convenient to plaintiff

as any other point, and would be entirely convenient to a larger number of shippers and passengers in the settlement at New River.

We will inquire, first, into the authority of the Railroad Commission. To that end we insert excerpts from the organic law of the state, from which the Railroad Commission claims to derive its powers.

Article 284 of the Constitution, to wit:

"To adopt, change and make reasonable and just rates, charges and regulations to govern and regulate railroads, steamboats and other water craft, and sleeping car, freight and passenger tariffs and service, express rates and telephone and telegraph charges.

"2nd. To correct abuses.

"3rd. To prevent unjust discrimination and extortion in the rates for the same on the different railroads, steamboats and other water craft, sleeping car, express, telephone and telegraph lines of the state.

"4th. To require all railroads to build and maintain suitable depots, switches and appurtenances whenever the same are reasonably necessary at stations.

"5th. To inspect railroads and to require them to keep their tracks and bridges in safe condition."

Article 286 of the same instrument in its concluding paragraph states that the power of the Commission shall affect only passenger, freight, and express companies within the state.

This last excerpt is inserted here as it shows not an additional grant of power, but it, as construed with the other paragraphs relating to the power of the Commission, serves to explain and emphasizes the power given in article 284. The purpose of the last article—that is, article 286—is to limit the whole purpose of the Constitution to the state, and to avoid coming in conflict with interstate laws upon the subject-matter.

Under the authority granted, and which we have quoted above, the Commission is authorized to direct the railroad company to build and maintain suitable depots. This must be evident to the lay, as well as to the legal, mind.

We have to go a step further and ascertain whether in interpreting the law it is possible to hold that the Commission has the authority to select the place at which to build a depot. The matter of establishing a station is not before us for decision; only, as just stated, a depot.

We may as well state at this time that we are of the opinion that the Commission has authority conferred upon it to determine where within the limits of the station, place, or city the depot should be built.

If for instance the railroad were to fix the station within the limits of a large city, the Commission is authorized to determine where the depot shall be built within the city in case the question arises between the company and the community as to the most convenient place for the accommodation of the public.

We are of opinion that the public convenience will be consulted by building this depot at the place selected by the Commission.

The settlement known as Gonzales is somewhat extensive on both sides of New River; some 20 miles in all. The railroad crosses it at about midway; that is, at the 10-mile point just between the two settlements. A road runs the whole distance on the south side of this stream, while on the north side there is not a continuous public road. This settlement along this road is a dense country settlement; within its limits are mills, gins, commercial houses, residences, ballrooms, livery stables, and other businesses. There are also a number of farms whose owners are shippers on the road, and some of them at times are travelers thereon.

A large majority of these settlers have signed a petition addressed to the Railroad Commission asking that the depot be built on the south side of the river within easier access of those who have to pass on the public road on their way to and from the post office and on their way to and from the depot.

The petitioners who have thus addressed

themselves to the Commission have to some extent at least been encouraged by the representatives or employés of the plaintiff road in the thought that the depot would be built at the place since selected by the Commission. At the time that those representing the railroad were obtaining their right of way they promised to the owners who conveyed a right of way over their property that the depot would be built at the place before mentioned. This is not all. While the matter was before the Railroad Commission the representatives of the road present when the case was called before that Commission expressed their willingness to any selection of the site that the Commission would make after a personal inspection. Upon that assurance a personal inspection was made.

When two of the commissioners were on the ground, plaintiff's agents and representatives sought, as they had a right to do, to place before the commissioners the advantages to the public if the depot were located at the site selected by the railroad authorities. These asserted advantages, however, did not impress the Commission sufficiently to influence them to select the site plaintiff proposed, to wit, in the east half of section 20; but the Commission selected a site as we have before stated, which the petitioners, before mentioned, asked to have selected. The Commission found it, we are informed by the testimony, the most desirable of the two, after having heard the witnesses and after the inspection before mentioned. That is, to be explicit, the Commission selected a site at a point along the railroad line in sections 28 and 29, as affording better facilities to shippers of freight and to the traveling public.

In reference to the assurances given or promises made by the employés of the plaintiff road at the time that they were obtaining a right of way—that the road depot would be on the south side of New River—we will state that in our view they were not legal and binding promises on the plaintiff. They were not inserted in the deed evidencing the right of way. They, none the less, show that plaintiff is in some degree responsible for the petition. It inspired the hope that the depot would be built as promised and when it became evident that another selection was about to be made it was natural enough on the part of the petitioners for them to apply to the Railroad Commission.

But be that as it may, taking all of the evidence of facts and circumstances of the case, the committee's selection should remain.

It does seem that the following is pertinent and can be considered in passing upon the question:

One of the commissioners, Mr. Cade, testified that Mr. Ellerbe, an executive officer of plaintiff's road said: (We will quote the question propounded to Mr. Cade and his answers.)

"Q. Did he make a statement that he would leave the matter to the Commission?

"A. Yes, sir; after they decided that the Commission would go down there, he said that he would leave the whole matter to the decision of the Commission after looking over the two localities.

"Q. Is that what determined the Commission to go down there?

"A. Yes, sir; by agreement of both sides."

He testified that Mr. Edenhorn, a prominent officer of the railroad company, and Mr. Ellerbe were both present when the selection was made by the commissioners; that there were about 300 men of the settlement present; that it was proposed by the commissioners that the point should be selected anywhere opposite Mrs. Moore's residence to the crossing of the New River by the road; that no objection was urged by the plaintiff at the time to the building of the depot at the place before indicated; that the only objection was by Mr. Ellerbe, who said something about a wye built on the Picard and Geismer line; that nothing was said about the impossibility of constructing a "passing track," and that

there was no objection urged on the ground that a "house track" could not be constructed at the place selected by the committee for a depot; that it was not even mentioned that the wye could not be put on at the point where the inhabitants of the settlement wanted to have the depot.

True, the foregoing is not absolutely conclusive, and the plaintiff would still be entitled to relief if the Railroad Commission did not have the power to direct where the depot should be built. Furthermore, if the enforcement of the order rendered operations of the road at that place less safe, if the order were unreasonable, if the enforcement of the order would prove inconvenient to the shipping and traveling public and a useless burden to the railroad.

We have already discussed the first proposition before stated and have expressed the conclusion that the Commission could select the site for a depot within the limits of the station or at the stopping place.

The station is a regular stopping place where the Commission has a right to have constructed a station, waiting room, and office. Upon that body is conferred the power to "govern and regulate railroads" in case of a difference arising between a large majority of the persons of the community and the railroad about the situs of the depot, and the authority to come forward and select the site, subject to review by the court, and the order selecting the site will not be set aside unless it is manifest that the commissioners' act is erroneous and an abuse of authority. State ex rel. Tompkins v. Chicago, St. Paul, M. & O. R. R., 12 S. D. 305, 81 N. W. 503, 47 L. R. A. 569.

We will dwell a moment upon the subject of danger to life, urged by plaintiff as a reason why the depot ground should not be selected as it has been. That is a highly important consideration, for it goes without saying that life should not be exposed, and all accidents should be avoided by every reasonable means.

We have considered the evidence from that point of view, and we have not found that under proper construction of the track, the bridges and the appliances there would be any greater danger than at any other depot at or near a small stream.

The testimony of the chief engineer of the road and of other engineers for the plaintiff is that the operations of the road would be safer if the site selected by the plaintiff were taken instead of the site selected by the Railroad Commission.

This is an expression of opinion. After having considered the details of the case and the nature of the issues, we are not convinced that the testimony sustains that view.

But it is urged in behalf of plaintiff that the site selected by the Commission would occasion additional expenses. It is made to appear by the evidence that the amount additional is not large and is not enough to be a controlling element in the case. Among other things it was said that the expense would be greater because the company would have to buy lands upon which to place the depot and other appliances, its wye track and other tracks. This was met at the time (and is a proposition which is still open, as we understand) by an offer on the part of the public or those directly interested to convey land sufficient for that purpose.

There was testimony regarding other considerations which led the railroad agents and employés to a preference of the railroad's site at the place selected by the plaintiff Railroad Company. We pass it without comment. It is not controlling in any way. There is no question but that, everything considered, it is reasonable to conclude that, as understood by the public at the settlement (Gonzales) in question, the depot should be as heretofore selected by the Commission.

Lastly, the contention is, on the part of plaintiff, that the order of the Railroad Commission is vague.

The chief engineer of plaintiff, testifying as a witness, does not in his testimony convey the idea that the order is vague; he seems to have understood where it was the intention to have this depot located.

The company is at liberty under the order of the Commission to locate the depot or station house at the place most convenient to the railroad within the limits intended by the order. When the commissioners and the officers of plaintiff's road, who had come down from Baton Rouge for the purpose of passing upon the question by first inspecting the place, went to the place the train was stopped in front of the dwelling house of Mrs. Moore, as shown by the testimony. No one at the time appears to have been in doubt about the place intended by the petitioners' and by the Commission.

We will state in conclusion that it must be borne in mind that the Railroad Commission is intrusted with important administrative functions and that "the number of persons who may be concerned or interested at some particular point enters as an important factor." Morgan Railroad Case, 109 La. Ann. 247, 33 South. 214.

There are features in the cited decision very similar to those in the case before us for decision. These features sustain our views in this case.

For reasons stated and the law and the evidence being in favor of the defendant, the judgment is affirmed.

MONROE, J., dissents.

### On Rehearing.

Plaintiff admits that it has selected a site for a station and depot at Gonzales.

The only difference between plaintiff and defendant is as to where shall the depot be constructed.

Passenger depots are constructed mainly for the accommodation, convenience, and comfort of passengers.

"The location of railroad depots has much to do with the accommodation of the wants of the public." This is from Marsh v. Fairbury, 64 Ill. 414, 16 Am. Rep. 564, in which the court held that agreements to establish depots at a certain point were void, as it was against public policy. But of this agreement between plaintiff and a firm about the situs of the depot later.

In accordance with agreement among the parties before the suit was brought, the question of the situs of the depot was left to be settled by the Commission. Two of the members of the Commission repaired to Gonzales. In the presence of some of the officers of the railroad, the two commissioners concluded to order that the depot be erected as prayed for by appellees. This was ratified by the whole Commission.

Continuing with our statement of the case, it appears that at the time the representatives of the railroad company were obtaining rights of way for their railroad, which they obtained free of charge from a number of landowners on the way, they indicated to these landowners, as an inducement for them to sign, where the depot site should be.

This same site was selected by the Commission.

This may not bind the company, that is the fact that these officers held out the hope to the landowners that the situs would be at the place afterward selected by the commissioners; at the same time it goes far to relieve the Commission from the charge of arbitrariness. It was not, it is true, inserted in the deed making transfer of right of way. But it was held out as an inducement.

Furthermore, there was an agreement entered into between one of the officers of the company and two joint owners of an old field that the railroad would own part of the

tract on which the railroad company was about to erect the depot. The agreement was that part of the land to be divided into lots would be owned by the railroad company. Every alternate lot, or something of the kind, was to be the interest of the railroad company. That agreement has not been denied.

Upon that point, in People v. Chicago, 130 Ill. 175, 22 N. E. 857, the court held, "that contracts binding the power to locate depots are against public policy."

Again, "Railway company by contract with individuals cannot maintain stations at particular points." The company must be free to establish or re-establish its depots.

The same doctrine is laid down in Holladay v. Patterson, 5 Or. 177. Even stronger expressions are found in Texas & P. R. R. v. City of Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385, and there is something to the same effect in Heirs of Burney v. Ludeling, 47 La. Ann. 75, 16 South. 507.

The Railroad Commission, part of whose function is to regulate the service in some respect at least, has the authority to prevent the consummation of such agreement.

The Commission having the power "to govern and regulate railroads" (Const. art. 284), "to correct abuses and prevent unjust discrimination, and require railroads to build and maintain suitable depots," has the authority to prevent a railroad from building a depot in accordance with an agreement such as that before indicated, and should have the authority to direct the railroad to place it at a place the most convenient, provided it is entirely feasible, not arbitrary, and to the best interest of those for whose accommodation a depot is built.

For reasons stated, it is ordered, adjudged, and decreed that our former decree be reinstated and reaffirmed. It is made the judgment of this court and fully reinstated in every respect. It follows that applicant's demand on rehearing is rejected.

MONROE and PROVOSTY, JJ., dissent.