OVERTON,' J.
 

 Marie Alphonse Michoud, in 1883, was the owner of a large tract of land, in the parish of Orleans, fronting on Lake'Pontchartrain, and extending from near Little Woods to Chef Menteur. In that year defendant was building its railroad into New Orleans, and obtained a right of way 200 feet wide through the Michoud tract. In the same year, namely, on November 7, 1883, defendant acquired from Michoud, by notarial act, a narrow strip of land, 3,000 feet in. length, fronting on Lake Pontchartrain, and adjoining its right of way in the rear. The transfer of this strip was made for the sum of $500 cash, and for the following additional consideration, and upon the following terms, to wit:
 

 “This sale is also made for and in consideration of the obligation formally assumed by said purchaser through its resident general agent, to build a station house and to locate and establish a regular station and stopping place of the said railroad company on the land herein conveyed.
 

 “The parties hereto acknowledge and declare that the agreement for this sale was made with the understanding and on the absolute condition that the said New Orleans & Northeastern Railroad Company is buying for the purpose of erecting and establishing a permanent station and stopping place on said land, and that these presents are executed and signed under .the same condition and reservation, without which the vendor herein would not have consented to convey said property.
 

 “And it is understood that in case the said station and stopping place should not be located and established as herein agreed upon, or if, at any time, after being established, the said railroad company should discontinue the same, tbe said vendor or his heirs and assigns will be authorized to claim and recover the property conveyed on returning the price of five hundred dollars therein paid.”
 

 Michoud, after the foregoing act was executed, signed another act of sale, which, while it apparently included the strip conveyed by him to defendant, later on expressly excepted
 
 *825
 
 the strip so conveyed from the sale, but which subrogated his vendee, as relates to this strip, to all of his rights and actions of every hind and nature, whether of redemption, reyersion, or rescission against defendant. This provision appears word for word in all of the transfers down to and including the one to plaintiff.
 

 The station has not been built, nor during the 43 years that have elapsed between the date of the execution of the act, containing the provision to erect and maintain the station, and the institution of this suit, so far as appears, has any effort been made by defendant to build the station, or by Michoud or his subrogees to have defendant build it.
 

 On December 1, 1926,'plaintiff tendered to defendant the $500 it had paid Michoud and demanded the conveyance of the property to it, but defendant refused to accept the tender. On the day following, the present suit was instituted to recover the property by reason of the failure of defendant to build and maintain the station. Chief among the defenses urged are prescriptions, both acquisitive and liberative. Defendant pleads the prescriptions of 5, 10, and 30 years, liberandi causa, and 10 and 30 years, acquirendi causa.
 

 The provision in the contract relative to the recovery of the property in the event of the failure to build and maintain a statiqjr is properly a resolutory condition.'
 

 Plaintiff does not question the legality of the obligation assumed by defendant, as part of the consideration, to erect and maintain a .station on the land in question. But nevertheless, before deciding the case, it is proper to inquire into the validity of that provision.
 

 In Burney v. Ludeling, 47 La. Ann. 73, 96, 116 So. 507, it is broadly said that an agreement by a railroad to establish its stations or depots at particular points, in consideration of grants of land, was illegal, and in Louisiana Railway & Navigation Co. v. Railroad Commission, 121 La. 848, 859, 46 So. 884, which was a case in which the railroad company was seeking to establish a station at a point, where it was promised a part of the land to do so, over the protest of a large number of the residents of that locality, who desired the station located at a different point, and in whose favor the Railroad Commission had ruled, it was' also broadly said “that contracts binding the power to locate depots are against public policy,” and in the same case it was also said that a railway company, by contract with individuals, could not bind itself to maintain stations at particular points, but must be free to establish or re-establish them.
 

 In 22 Ruling Case Law, § 90j p. 837, it is said:
 

 “The broad rule is sometimes laid down that a railroad company has no authority to bargain away its right to locate stations in such manner as the public interests may require, and that any contract locating a station being in its nature something which might have the effect to hamper the company in the discharge of its duties to the public, every contract having for its purpose the permanent location of a station is by its very terms contrary to the policy of the law and unenforceable. * * * The view denying validity to a contract to locate a station has not, however, met with favor. On the con-' trary, the general rule is that a contract of a railroad company merely to locate a station at a given point is not per se void, but is binding upon the company so long as it is possible for the company to discharge the duties owing by it to the public and at the same time discharge the duties imposed by the contract.”
 

 See, also, 33 Cyc., pp. 142, 177, and Atlanta & West Point Railroad Co. v. Camp, 130 Ga. 1, 60 S. E. 177, 15 L. R. A. (N. S.) 594, 124 Am. St. Rep. 151, 14 Ann. Cas. 439, and annotations thereto, published in 15 L. R. A. (N. S.) 594.
 

 The principle under consideration is too broadly stated in the Burney and the Louisiana Railway & Navigation Go. Cases, and more broadly than there was even any occasion to state it. After mature reflection, we see no reason, why a railway company, in
 
 *827
 
 establishing its stations, cannot acquire land in full or partial consideration of the obligation to erect and maintain a station at a particular point, whenever in doing so it does not interfere with the interests of the public in the location of the station, and whenever the contract is not inconsistent with the duty of the railroad, should that contingency arise, to re-establish the station elsewhere, when the public interests may so require, and not inconsistent with the rights of the state to determine that question. A contract merely to locate and maintain a station at a given point is not per se void.
 

 The contract in this case recited, and nothing to the contrary appears, that the company was purchasing for the purpose of establishing a station. There was no reason why the railroad should not have acquired land for the purpose of erecting and establishing a station and stopping place, and why the railroad, in acquiring the land, should not have assumed the obligation of erecting and maintaining the station, and, at the same time, have accorded to the transferor the right, should the company not erect the station, or should it discontinue it, to recover the property on returning the cash portion of the consideration. It is true the contract refers to the station to be established as a permanent one, but at the same time it contemplates the possibility of its nonerection, and also of its discontinuance, if established, and provides for such contingencies. Reasonably construed, the contract leaves the company free not to erect the station and to discontinue it, the only consequence being the bringing into existence of the right of the transferor to recover the land on returning the cash' portion of the consideration paid. The contract, may therefore be said to have been framed consistently with the public -interests, and with the duties of the railroad. Our conclusion is that the present contract is valid.
 

 As the obligation to erect and maintain the station is valid, the clause relating to dissolving the contract is also valid, and was therefore enforceable. Plaintiff’s action is, in reality, one to recover the property by enforcing the resolutory condition. It is by reason of the failure to establish the station that plaintiff seeks to recover the property. The failure to establish the station did not dissolve the act of transfer of right, for the failure was not independent of the will of either party to the contract, and therefore the dissolution had to be judicially demanded. C. O. art. 2047. Moreover, the contract left it optional with the transferor whether it should be dissolved by returning the cash portion of the purchase price, notwithstanding the failure.
 

 The action to enforce the resolutory condition is an action to enforce a part, whether expressed or implied, of a contract. It is not an action to annul or rescind a contract, which may be based only on some vice existing ab initio in the contract, but to dissolve a valid contract by enforcing a condition, expressed or implied, in it. The action, although it may result in the recovery of immovable property, is regarded as a personal action, and as barred by the prescription, liberandi causa, of 10 years, established by article 3544 of the Civil Code, by which all personal actions not otherwise provided for are prescribed. George v. Lewis, 11 La. Ann. 654. That this prescription is applicable to the resolutory action, see, also, Jones v. Crocker, 1 La. Ann. 440; Hunter v. Williams, 16 La. Ann. 129; Gonsoulin v. Adams & Co., 28 La. Ann. 598; School Directors v. Anderson, 28 La. Ann. 739; Latour v. Latour, 134 La. 342, 64 So. 133. This prescription begins to run the moment the cause of action to enforce the condition arises. In the contract before us no time is fixed within which defendant was to build the station. Such being the case defendant had a reasonable time, under the circumstances of the case, in which to com
 
 *829
 
 ply with its obligation, say one, or even two years. No reason appears why it could not have consistently complied with the obligation it had assumed. Since over 40 years elapsed between that time and the bringing of this suit, without the making of an effort to enforce the resolutory condition, contained in the act by which the property was transferred to defendant, it is clear that the action to enforce the resolutory condition is barred by the prescription of .10 years.
 

 Were we doubtful whether the prescription of ten years should be sustained, we likely should have no hesitancy in sustaining, under the facts of the case, the prescription of 30 years, liberandi causa, by which all actions to • recover immovable property are barred, established by article 3548 of the Civil Code, but we find it unnecessary to consider that prescription.
 

 For the reasons assigned, the judgment appealed from is annulled and set aside, the plea of prescription, liberandi causa, of 10 years is sustained, and plaintiff’s demand is dismissed, plaintiff to pay-the costs in both courts.