## CADDO PARISH SCHOOL BOARD v. HARDEMAN et al. *

### No. 5092.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1935.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellees.

TALIAFERRO, Judge.

On December 18, 1898, James M. Hoss conveyed to the Texarkana, Shreveport & Natchez Railroad Company, grantor of Texas & Pacific Railway Company, defendant herein, a strip of land 100 feet wide for right of way uses over lands owned by him in section 24, township 22 north, range 15 west, Caddo parish, La., and in the same instrument he conveyed to the railway company one-half interest in a tract of 75.36 acres through which the right of way had been given. With respect to the conveyance of the interest in this tract, the deed contains the following stipulation:

"The interest in said 75.36 acres is conveyed with the understanding that a station and depot is to be placed on said land by said Railroad Company, and in the event of the failure of said company to do this within one year from this date, this land is to revert to the vendor, without any cost or payment of money by him to said Railroad Company."

James M. Hoss died on May 27, 1898, leaving a widow in community and four children. Thereafter, the interest of the children in the land was adjudicated to their mother, and a goodly portion, if not all, of the tract was laid off in squares and lots for a townsite; a plat thereof made and recorded; and on December 5, 1900, Mrs. Hoss and the railway company executed an instrument dedicating to public use the streets and alleys shown thereon. The new town was named "Hosston." Lots were sold off to various persons and some mercantile establishments were opened, residences and churches built.

The school board of Caddo parish, having need for a site at Hosston on which to erect a new school building, decided to acquire a large number of the lots in the town owned by several different persons, and, being unable to reach an agreement with them, on January 30, 1931, instituted expropriation proceedings to have the lots adjudicated to it. In due time and course, there was judgment, based on a jury's verdict, as prayed for. The value of the property, with regard to divisions and ownership, was fixed by the jury and promptly paid by the school board into the court's registry to be distributed and paid out through the court to the persons entitled to it. The various owners were satisfied with the values fixed by the jury.

The owners of the lots, where no controversy existed as to the title thereto, were promptly paid the amounts due them.

The Texas & Pacific Railway Company, to whom had been transferred all the rights of the Texarkana, Shreveport & Natchez Railway Company under the deed from Hoss, was made a party to the expropriation proceedings, and set up claim of title to one-half interest in certain of the lots adjudicated to the school board, the value whereof was fixed at $1,575. The railway company based its title upon the transfer to its grantor by Hoss in 1898. Its asserted interest in the lots was challenged by those holding adverse record titles thereto, emanating from the widow and heirs of Hoss, and therefore its right to be paid the fund in the registry of the court was denied. The railway company was ruled into court by the adverse claimants to show cause why said fund should not be paid over to them. The position of these claimants is clearly disclosed from the following allegations of their application for the rule:

"XI. That petitioners acquired title to their respective properties as above described as heirs and descendants of the late James M. Hoss and his wife, Mrs. Emma Hoss.

"XII. Petitioners further show that the Texas & Pacific Railway Company claims title to an undivided half interest in and to the property hereinabove described as the vendees of the Texarkana, Shreveport & Natchez Railway Company, the Texas & Pacific Railway Company making the claim that they acquired a half interest in said property by virtue of a deed from James M. Hoss of date December 8, 1898.

"XIII. Petitioners further show the court that in the case No. 34,704 on the docket of the First District Court, entitled Receivers of T&P Railway Company v. Will R. Lloyd, the said deed of James M. Hoss to the TS&N Railway Company, of date December 8, 1898, relied on herein by the T&P Railway Company as the basis of their title, was declared null and void by this honorable court, which judgment was affirmed by the Court of Appeal, Second Circuit, said case being reported in 6 La. App. 755; that said suit was between the same parties and formed by them against each other in the same quality and involved the same thing and was formed on the same cause of action as the case at bar, namely the question of the validity of the deed of December 8, 1898, signed by James M. Hoss, which deed was declared a nullity by the First Judicial District Court, Caddo Parish, Louisiana, and affirmed on appeal.

"XIV. Petitioners therefore show the court that the said case No. 34,704, Receivers of the T&P Railway Company v. Will R. Lloyd et al., having held that the deed from James M. Hoss to the TS&N Railway Company, of date December 8, 1898, was a nullity for the reason that it was founded upon an illegal consideration; that said judgment is res judicata of the claim of title asserted by the T&P Railway Company in this case, and is hereby specially pleaded by your petitioners in bar of the right of the T&P Railway Company herein.

"XV. Petitioners further allege and in the alternative that the pretended contract of sale declared upon by the T&P Railway Company is illegal, null and void as being contrary to public policy for the reasons hereinafter more fully set forth.

"XVI. Petitioners deny that any legal or valid consideration was ever paid to their ancestor, J. M. Hoss, for the pretended act of sale of December 8, 1898, and aver that the only consideration for said tract of land described in said pretended deed was the understanding and agreement that a station and depot would be placed on said land by said railroad company, which stipulation, understanding and agreement was illegal, null and void as contrary to public policy as it was a stipulation and an attempt to transfer property to influence and control the railroad company in the location of its station and depot, which location the law required to be made to the best interest of the railroad company and the service of the public uninfluenced by private considerations or inducements offered or paid by individuals.

"XVII. That said attempted transfer of said property for such illegal purpose was contrary to public policy and without lawful consideration and is null and void and should be so held by this court.

"XVIII. Further answering, and in the alternative, petitioners aver that if the court should find that said contract was not invalid because contrary to public policy, then and in that event they aver that said sale of said land to said railroad company was dependent upon the happening of a suspensive or precedent condition, that a station and depot were to be placed upon said land by said railroad company and in the event of the failure of said company to do this within one year from that date, the land was to revert to the vendor without any cost or

payment of money by him to the railroad company.

"XIX. Petitioners further aver that the said railroad company failed and neglected to place said station and depot on said land within said year, as required by said condition precedent in said act, and said land never vested in said railroad company as this condition never happened.

"XX. Petitioners further allege that during the year allowed to the railroad company to establish said station and depot on said land that J. M. Hoss proceeded to sell lots in the said land and divided the proceeds with the said railroad company, but when the year was out and the railroad company had failed to place a depot and station on said land, the said Hoss refused to pay anything further and he and his successors and heirs have continued to make such sales up to the present time and the railroad company has acquiesced in this interpretation of the agreement for more than 30 years during which time the petitioners and their ancestors in title have occupied said property and. have had open and notorious possession of the same, have paid all taxes thereon and have held same adversely to the railroad company or any other person for more than 30 years, which under the law of this State gives them a good and valid title, which prescription of 30 years, as provided for by the laws of the State of Louisiana, petitioners hereby plead in support of their title.

"XXI. Petitioners further allege and in the alternative that if said instrument under which the T&P Railway Company claims title, had any effect to invest the plaintiff with any sort of ownership in said land, the same instrument by its very terms reinvests such ownership in the vendor on the happening of the condition upon which said reinvestment was made by its terms, to-wit: the failure of the railroad company to locate and place a station and depot on the land within the time specified, and if said property ever passed from the vendor, it returned to him and his successors by virtue of the stipulation for its return, the railroad company having failed to comply within the year, it being a lawful stipulation of contract within the right of the parties to make for themselves, and is the law between the parties and their successors."

The railway company denied all of these allegations, except those of article No. 13, to which it said:

"13. Defendant in rule admits that in the case No. 34,704, on the docket of the First District Court, entitled J. L. Lancaster & C.

L. Wallace, Receivers of the T&P Railway Company v. Will R. Lloyd, the deed of James M. Hoss to the Texarkana, Shreveport & Natchez Railway Company, of date December 8, 1898, was declared null and void by this court, which judgment was affirmed by the Court of Appeal, Second Circuit, as reported in 6 La. App. 755, but denies the remaining allegations of said article."

And for further answer it said:

"Further answering said rule, defendant shows that J. M. Hoss, from whom the petitioners in said rule claim title, sold and conveyed to the TS&N Railway Company a strip of. land 100 feet wide, running in a northerly and southerly direction through the W½ of NW¼ and W½ of N½ of SW¼, Section 24, Township 22 North, Range 15 West, containing 9.24 acres more or less, to be used as a right-of-way of said railroad, as shown by deed dated December 8, 1898, recorded in Conveyance Book 19, p. 733, of the Recorder's office of Caddo Parish, Louisiana; that by said deed J. M. Hoss, also conveyed to the said TS&N Railway Company an undivided half interest in and to a tract of land containing 75.36 in said Section 24, Township 22 North, Range 14 West; a copy of said act of sale being hereto annexed and made part hereof. .

"That within one year from the date of said act of sale said TS&N Railway Company established a station and depot in accordance with the provisions of said act.

"23. That shortly following the death of said J. M. Hoss, his widow, Mrs. Emma Hoss, caused herself to be appointed natural tutrix of Connie Hoss, Samuel Hoss and Maurice Hoss, minors, who, with J. M. Hoss, a major, constituted the sole heirs at law of the said J. M. Hoss who died intestate; as shown by the record and proceedings in the case of the tutorship of the minors of J. M. Hoss and Mrs. Emma Hoss, No. 63,034 on the docket of your Honorable Court.

"24. That in said proceeding the said Mrs. Emma Hoss, natural tutrix, as aforesaid, caused an inventory of the property of said minors to be made and returned and had the undivided three-eighths interest of said minors adjudicated to her as their interest in the undivided half interest in 75 acres of land in the NW¼ of Sec. 24, Township 22 North, Range 15 West, Caddo Parish, Louisiana, described in Conveyance Book 19, p. 733, known as Hosston Station Lands.

"25. That a subdivision of said 75-acre tract conveyed by J. M. Hoss to the TS&N

Railway Company was made and recorded in Conveyance records of said Recorder's office, which map was recorded in Conveyance Book 33, p. 27, of said office.

"26. That the said Mrs. Emma Hoss, who had acquired the interest of the minor heirs at law of said J. M. Hoss, her husband, united with the TS&N Railway Company in an act of dedication to the public of streets and alleys shown on said map of the Town of Hosston, as shown by said act filed December 11, 1900, and recorded in Conveyance Book 26, p. 351, as shown by copy of same attached hereto and made part hereof.

"27. That as shown by deed from said TS&N Railway Company and said Mrs. Emma Hoss to J. M. Hoss, recorded December 11, 1900, in Conveyance Book 27, p. 13, of said office, the said J. M. Hoss purchased from said TS&N Railway Company and his mother, Mrs. Emma Hoss, Lot 7 in Block 19, of the Town of Hosston, Caddo Parish, Louisiana, as per map of said Town recorded in said Recorder's office.

"28. That, as shown by deed from said Railway Company and said Mrs. Emma Hoss, they conveyed to J. C. Allen et al. Lot 3, Block 15, of said Town, as per map, and that the said J. M. Hoss was an attesting witness to said act of sale.

"29. That the said Mrs. Emma Hoss died on/or about July 11, 1911, intestate, and that her heirs at law, said J. M. Hoss, said Connie Hoss, wife of P. C. Worley, said Samuel Hoss and said Maurice Hoss caused her succession to be opened in your Honorable Court, and accepted said succession purely and simply and without benefit of inventory, and were placed in possession of the property of their said mother by judgment of this Honorable Court, dated August 4, 1911.

"30. That, as shown by act from the above named heirs of the said Mrs. Emma Hoss to Will R. Lloyd, the said heirs conveyed to the said Lloyd, Lots 14, 15 and 16 of Block 15, of said Town of Hosston, as per said map, said act being dated April 2, 1913, and recorded June 23, 1913, in Conveyance Book 87, p. 15 of said Recorder's office, a certified copy of said act being hereto attached and made part hereof.

"31. Your defendant in rule shows that by said transactions above set forth the plaintiffs in rule and their ancestors in title acknowledged and admitted that the erection, construction and operation of the depot and station by the said TS&N Railway Company was a performance by it of said Railway Company's obligation to place on said land a station and depot. That said station and depot was placed by said Railway Company on said property and was in all respects suitable and proper, and your defendant in rule now pleads estoppel against the claim of the movers herein to claim the proceeds now in the registry of the court arising from the judgment of expropriation in the above numbered and entitled cause.

"32. Further answering, defendant in rule pleads prescription of ten years in bar of the demands of the plaintiffs in this rule.

"Wherefore, premises considered, defendant prays that the demands as set forth in said rule be rejected, and that there be judgment in favor of your defendant in rule, declaring it to be entitled to one-half of the proceeds arising from said expropriation and ordering the Clerk of this Honorable Court to pay same to this defendant in said rule.

"Defendant in this rule prays for all orders and decrees necessary for costs and for general relief."

During the trial of the rule, plaintiffs therein filed a plea of estoppel and of res judicata, in the following words and figures:

"I. Movers show that the T&P Railway Company, defendants in rule herein issued, in answer to said rule set forth in Article 22 of their answer as a basis of their claim to title to an undivided half interest in and to the property in controversy in this suit, a deed from J. M. Hoss to the TS&N Railway Company, of date December 8, 1898, recorded in Conveyance Book 19, p. 733 of the Recorder's Office of Caddo Parish, Louisiana, said deed purporting to convey an undivided half interest in a tract of land containing 75.36 acres in Section 24, Township 22 North, Range 14 West, Caddo Parish, Louisiana.

"II. Movers further show that the T&P Railway Company in Article 13 of its answer to the rule herein, sued out, made the following admission:

"'Defendant in rule admits that in the case No. 34,704 on the docket of the First District Court, entitled J. L. Lancaster and C. L. Wallace, Receivers of the T&P Railway Company v. Will R. Lloyd, the deed of James M. Hoss to the TS&N Railway Company, of date December 8, 1898, was declared null and void by this court, which judgment was affirmed by the Court of Appeal, Second Circuit, as reported in 6 La. App. 755. * * *'

"III. Movers further show that suit No. 34,704 on the docket of the First District Court, Caddo Parish, Louisiana, entitled

Receivers of the T&P Railway Company v. Will R. Lloyd, was a suit between the same parties or their privies, as in the case at bar, involving part of the property alleged to have been conveyed by said deed from James M. Hoss to the TS&N Railway Company, of date December 8, 1898, and that the T&P Railway Company, through its receivers, alleges as a basis for its claim in said suit the validity of the deed from James M. Hoss to the TS&N Railway Company of December 8, 1898, and the defendants deny the validity of said deed; and the District Court and the Court of Appeal in said suit held that said deed was a nullity as contrary to public policy, and the Supreme Court of the State of Louisiana denied an application for writ made by the receivers of the T&P Railway Company, and held that the judgment of the Court of Appeal was correct, and that said judgment is now final.

"IV. Movers further show that the court having held in suit No. 34,704 on the docket of the First District Court, entitled Receivers of the T&P Railway Company v. Will R. Lloyd, in a suit between the same parties or their privies to the case at bar, that the deed from James M. Hoss to the TS&N Railway Company of date December 8, 1898, recorded in Conveyance Book 19, p. 733, of the Recorder's Office of Caddo Parish, Louisiana, was a nullity; that the T&P Railway Company is now estopped from making claim of title in this suit under and by virtue of said deed from James M. Hoss to the TS&N Railway Company of December 8, 1898, there having been a valid and final judgment rendered between these parties or their privies in suit No. 34,704 on the docket of the First District Court entitled Receivers of T&P Railway Company v. Will R. Lloyd, holding the said deed a nullity, which estoppel by judgment and record and plea of res judicata your movers now specially plead.

"Wherefore, movers pray that this their plea of estoppel by judgment, by record and plea of res judicata be sustained, and that movers be declared entitled to and be paid the money now in the registry of the court.

"Movers further pray for all orders necessary, general and equitable relief."

The rule was made absolute; the fund in the court's registry was adjudged to belong to the plaintiffs in rule and was ordered paid over to them. None of the pleas was definitely passed on. The railway company brings this appeal.

In this court defendant filed a plea of ten years' prescription in bar of appellees' demands.

■ Appellees here insist on their pleas of estoppel by judgment and record and res judicata. These pleas, by their nature and legal effect, are virtually the same. There is an admission in the record that the parties to the Loyd suit, decided by this court (Lancaster and Wallace, Receivers, v. Loyd, 6 La. App. 755), or their privies, are parties to the present suit; and for this reason and for the further reason that the validity or lack of validity of the conveyance by Hoss to the defendant's grantor is at issue, it is argued that these pleas should be sustained.

We do not think these pleas well founded. Article 2286 of the Civil Code is a concise yet comprehensive and unambiguous statement of our law as to the essentials to constitute and the effect of the thing adjudged. It reads:

"*Judgments—When res judicata.*—The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."

While it is admitted that the parties to the present suit, or their privies, were all parties to the Loyd suit, yet the cause of action is not the same and the demand is not "formed by them against each other in the same quality." Plaintiffs in the instant case were called in warranty and made parties as warrantors in the Loyd Case. Their quality therein was not as plaintiff or defendant, primarily. They were made parties by the defendant only to preserve intact his rights against them under their warranty obligation to him. In that case plaintiffs here were asserting no cause of action; they were making no demands upon the railway company nor against Loyd. In that case the title to real estate, put at issue in a petitory action, was directly involved. Here, the primary issue is as to the ownership of a fund in the registry of the court derived from expropriation of lots not involved in the Loyd Case. State v. Sugar Refining Co., 108 La. 603, 32 So. 965; State ex rel. Puritan Co. v. City of New Orleans, 169 La. 365, 366, 125 So. 273.

■ In the Loyd Case, 6 La. App. 755, the same points of attack were made against the validity and legality of the transfer by Hoss

to the Texarkana, Shreveport & Natchez Railway Company as are made by plaintiffs in the present case, viz.: (1) Want or failure of consideration; and (2) the lack of a legal consideration. The first relates to the suspensive condition in the conveyance to the effect that the grantee would erect a depot on the land within twelve months, and the second relates to the invalidity of the conveyance because in its nature it contravenes a sound rule of public policy. This court, in the Loyd Case, held that the consideration in the Hoss transfer had not failed because a depot was erected on the land within the term fixed, and also held that the transfer was null and void for lack of a legal consideration, in that the consideration stipulated was in violation of public policy. In the course of our opinion, we said:

"As to the legality of the stipulation, the defendants base their contention on the decisions in Heirs of Burney v. Ludeling, 47 La. Ann. 73 [16 So. 507] in which the court said:

" 'A railroad company is a quasi public agent, and it is its duty, independent of any agreement to secure an advantage to the corporation, to establish its stations at points most convenient for the public interest. An agreement, therefore, by the corporation for a part of the land to establish its depots and hotels at particular points is illegal.'

"And upon the opinion in L. R. & N. Co. v. Railroad Commission, 121 La. [848] 858, 46 So. 884, where the court, with reference to agreements by the corporation for an interest in lands in consideration of the location of a station in the vicinity, cited People v. Chicago [etc., Co.] 130 Ill. 175, 22 N. E. [857] 837, in which case it was said 'that contracts binding the power to locate depots are against public policy.'

"The plaintiffs contend, however, that the expression used by the court in the former case was obiter dicta, in that it appeared that the transaction considered in that case was made by and for the benefit of the directors, and that in the latter the validity of the transaction was not at issue, and it is urged that neither of the cases cited control the present case, and that the weight of authority is that when the transaction is by the corporation and accrues directly to its benefit, it is not per se invalid but its validity is dependent upon whether the interest of the public has been prejudiced; citing Elliott, Vol. 2, Secs. 382 and 386; Atlanta, etc., Ry. Co. v. Camp, 130 Ga. 1, 60 S. E. [177] 170 [15 L. R. A. (N. S.) 594, 124 Am. St. Rep. 151, 14 Ann. Cas. 439]; also Woodstock

Iron Co. v. Richmond & Danville Extension R. Co., 129 U. S. 643 [9 S. Ct. 402] 32 L. Ed. 819.

"Hence plaintiffs contend that defendants were bound to show that the public interest had been prejudiced by the location of a depot at Hosston, or, if the burden of proof was on plaintiffs, that it was discharged by the evidence which showed that the railroad company had located other stations at short distances apart in that locality.

"While there is a distinction made as to the validity of transactions for the location of stations by the company, it is conceded that where the directors of the company have stipulated for the location of stations in consideration for the benefit to them individually, that the transaction is invalid per se; and while the authorities cited by plaintiffs state that the situation is different when the benefit inures directly to the company, yet it is not stated that in all cases where the benefit inures directly to the company that there is a presumption of validity.

"The reason upon which such transactions, where the benefit accrues to the directors, is declared to be invalid is that the law will not give its sanction to any agreement having a tendency to cause the directors to deviate from their duty to the public to have the stations located at places most convenient (Woodstock Iron Co. v. R. & D. Extension R. Co., 129 U. S. 643 [9 S. Ct. 402, 32 L. Ed. 819]); and while such reason would not be applicable where the benefit accrued directly to the company and the right or property acquired was necessary or convenient for the company's use in the transaction of its business, yet where the stipulation for the location of a station is made in consideration of an interest in property, which the stipulation and the evidence shows was not to be acquired for the purposes of the company's business but for the purpose of being subdivided and sold, we think such transactions may be properly said to have a tendency to cause the company to deviate from its duty to the public in locating its stations, and the law will not sanction such transactions.

"It is conceded there are decisions from other states in which it has been held that such a transaction as is presented here is per se invalid, and that the expression used by the court in Heirs of Burney v. Ludeling, supra, are sufficiently comprehensive to cover the present case; and while it is possible to distinguish the facts in that case from the present, the expression was deliberately used, and we think it is supported by reason,

and that the ruling in that case is applicable to the present."

The Supreme Court declined to grant a writ of review in the case, refusing the application therefor in the words, "judgment correct." Eight years have passed since this judgment has become final. It constitutes, and we are informed in counsel's brief, is relied upon by those acquiring lots from Hoss' heirs or assigns as a rule of property. There is no good reason why such effect should not have been given it.

The issues involved herein would be without complications but for the decision of the Supreme Court in R. E. E. De Montluzin Co. v. N. O. & N. E. Railway Co., 166 La. 822, 118 So. 33, 34. In that case the principle enunciated by the court in Heirs of Burney v. Ludeling, 47 La. Ann. 73, 16 So. 507, and in Louisiana R. & N. Co. v. Railroad Commission, 121 La. 848, 859, 46 So. 884, relied upon by this court in the Loyd Case, is criticized in the following language:

"The principle under consideration is too broadly stated in the Burney and the L. R. & N. Company Cases, and more broadly than there was ever any occasion to state it. After mature reflection, we see no reason why a railway company, in establishing its stations, cannot acquire land in full or partial consideration of the obligation to erect and maintain a station at a particular point, whenever in doing so it does not interfere with the interests of the public in the location of the station, and whenever the contract is not inconsistent with the duty of the railroad, should that contingency arise, to re-establish the station elsewhere, when the public interests may so require, and not inconsistent with the rights of the state to determine that question. A contract merely to locate and maintain a station at a given point is not per se void."

In that case, contrary to what was said in the two former cases, the court holds that a conveyance of land to a railway company in consideration, in whole or part, of the promise by it to erect a depot or station thereon is not per se void; that to render such a stipulation void, it would have to appear that the location of the depot on the conveyed lands was inimical to the public's interest. The matter would turn upon a question of fact. There is positive conflict between this opinion and that in the two former cases. This last expression of the court stands alone in our jurisprudence on the question, and in view of the peculiar circumstances and facts of the present case, we will adhere to our former decision on the issues involved and affirm the judgment appealed from.

We do not think the plea of prescription filed by defendant tenable. It would be good, most likely, against the attack on the Hoss deed, if it had been held that the resolutory condition therein (promise to erect depot within twelve months) had not been complied with; but that issue has been closed by the Loyd Case. R. E. E. De Montluzin Co. v. N. O. & N. E. Railway Co., supra; Askew v. V., S. & P. Railway Co., 171 La. 947, 132 So. 510.

The judgment appealed from is affirmed, with costs.