364 So.2d 258 (1978)
Joseph Barney DESHOTELS, Sr., Plaintiff-Appellant,
v.
Oremus FRUGE, Defendant-Appellee.
No. 6659.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1978.
Rehearing Denied November 28, 1978.
*259 Preston N. Aucoin and Gilbert W. Aucoin, Ville Platte, for plaintiff-appellant.
Jules R. Ashlock, Ville Platte, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
CUTRER, Judge.
This is a companion case consolidated for trial with Fruge v. Deshotels, 364 So.2d 263, our docket No. 6658. Separate decisions in these cases are being rendered by us this date.
These suits arise out of a contract for the sale of land made on February 20, 1967. On that date, plaintiff sold ten acres of land in Evangeline Parish to defendant for $2,500. The description of the acreage stated that it fronted "250' on the Vidrine-Pine Prairie blacktop highway." The sales contract contained the following clause:
"It is agreed to by the parties that vendee will not build his home any less than 350 feet from the said blacktop road."
In November of 1977, defendant began building his house on this tract of land *260 approximately 320 feet from the blacktop highway. In this suit plaintiff-vendor seeks a rescission of the sale, or, in the alternative, a mandatory injunction ordering defendant-vendee to move his house so that it will be at least 350 feet from the highway. Plaintiff further seeks damages and attorney's fees for the alleged breach of contract.
The trial judge rendered judgment in favor of defendant-vendee, dismissing plaintiff's suit. Plaintiff-vendor appealed.
Counsel for Deshotel[1] sets forth one broad specification of error:
"The trial judge erred in holding that the stipulation was illegal, invalid, and unenforceable, and/or had prescribed."
The trial court in its written reasons for judgment arrived at the following conclusions:
"1. The stipulation and/or restrictive covenant contained in the deef [sic] from Deshotels to Fruge is illegal, invalid and unenforceable as it does not form part of a regular planned subdivision;
"2. It is a predial servitude which, in this case, does not run with the land, and therefore is subject to the prescription of 10 years;
"3. Said servitude has prescribed." Based upon these reasons, the trial judge dismissed the plaintiff Deshotel's suit.
I. WHAT IS THE NATURE OR CLASSIFICATION OF THE CLAUSE IN QUESTION?
The trial court concluded that this was a predial servitude that did not run with the land. The attorney for Deshotel contends this clause cannot be classified as a predial servitude but, under the particular circumstances herein, must be treated as a personal obligation. To make this determination, we look to LSA-C.C. arts. 756, 646 and 757.
Article 756 of the Louisiana Civil Code provides in part as follows:
"If the right granted be of a nature to assure a real advantage of an estate, it is to be presumed that such right is a real servitude, although it may not be so styled."
Article 646 of the Louisiana Civil Code provides in part as follows:
* * * * * *
"Real servitudes, which are also called predial or landed servitudes, are those which the owner of an estate enjoys on a neighboring estate for the benefit of his own estate.
"They are called predial or landed servitudes, because, being established for the benefit of an estate, they are rather due to the estate than to the owner personality"
Article 757 of the Louisiana Civil Code provides in part as follows:
"Art. 757. If, on the other hand, the concession from its nature is a matter of mere personal convenience, it is considered personal, and can not be made real but by express declaration of the parties."
The effect of these provisions is that, if the charge or burden is laid on one estate for the use, benefit or advantage of another estate, such is a predial servitude. If the charge or burden is for "personal convenience" of the obligee, then it is treated as a personal obligation.
The provisions of the clause in question do not designate the kind of right the parties intended to create. When the instrument does not so designate the kind of right, the resolution of the question becomes a matter of contractual interpretation and is governed by both the general rules of construction of juridical acts and the rules of construction applicable specifically to instruments purporting to create servitudes. Under these rules of interpretation the intention of the parties must govern. McLure v. Alexandria Golf & Country Club, Inc., 344 So.2d 1080 (La.App. 3rd Cir. 1977).
*261 Applying these principles to the clause in question, we examine the evidence which applies to this problem. Mr. Deshotel unequivocably testified that the 350-foot setback was inserted in the deed for one reason which was that, when Fruge built his home, he did not want Fruge's home any closer to the blacktop roadway than the home that Deshotel intended to build. Deshotel, being more specific, stated that he wanted Fruge's home aligned with his so that when he (Deshotel) was on his front porch, he would not see the side of Fruge's house. Alignment of the two houses for the personal convenience of view was the sole and only purpose of the clause. Alignment for the limited purpose of view, as described by Deshotel, was inserted for the personal convenience of Deshotel. Neither the instrument nor the undisputed evidence give any indication that the burden or charge imposed on one estate was for the benefit of another. The restraint was purely for the personal convenience of Deshotel and we hold that the clause shall be classified as a personal obligation, which obligation tends to restrict the free use of land.
Counsel for Fruge contends that Civil Code art. 709 [2] prohibits this clause as it imposes services on the person and not on the estate. This argument was put to rest in the case of Mallet v. Thibault, 212 La. 79, 31 So.2d 601, 604 (1947), where the court held:
" . . . And we are not unmindful of Article 709 of the Code which seems to forbid the conventional establishment of a servitude in favor of a person. However, that article cannot be reconciled with Articles 757 and 758 which are contained in Section 2 of Chapter 4 of Title IV dealing with the establishment of servitudes and which provide directly to the contrary. This court recognized the existing conflict in Frost-Johnson Lumber Co. v. Sailing's Heirs, 150 La. 756, 91 So. 207, 245, where it was declared: `And with these conflicting provisions before us we cannot say that the law clearly prohibits the creation of a servitude upon lands in favor of a person and his heirs. And hence the intention of the parties should govern in such matters.'"
II. PRESCRIPTION
The trial judge referred an exception of prescription to the merits and maintained same in his judgment. The prescriptive period applicable to this personal obligation clause is Civil Code art. 3544, which provides in pertinent part as follows:
"In general, all personal actions . . . are prescribed by ten years."
The contract was entered into on February 20, 1967. The alleged breach occurred in November of 1977, when defendant-vendee began erecting his house. The prescriptive period of ten years began running in November of 1977, Cyr v. Louisiana Intrastate Gas Corporation, 273 So.2d 694 (La.App. 1st Cir. 1973); R. E. E. De Montluzin Co., Limited v. New Orleans & N. E. R. Co., 166 La. 822, 118 So. 33 (1928). Plaintiff-vendor had until November of 1987 to file his suit and, therefore, was well within the prescriptive period.
III. WHAT RECOURSE, IF ANY, WOULD DESHOTEL HAVE FOR A VIOLATION OF THE CLAUSE UNDER THE FACTS PRESENTED?
Having classified the clause, we must next determine whether Deshotel is entitled to any injunctive relief or a dissolution of the sale under the circumstances presented. As we approach this determination, and having concluded that this is a personal obligation which tends to restrict the free use of land, we must keep in mind the general rules set out in Fuller v. Hill Properties, Inc., 259 So.2d 398, 400 (La.App. 2nd Cir. 1972), wherein the court held as follows: *262 "`It is too well settled to require citation in support thereof that stipulations contained in restrictive covenants are stricti juris and every doubt should be resolved in favor of the unencumbered use of the property.' Chexnayder v. Rogers, 95 So.2d 381 (La.App.Orl.Cir. 1957). See also, Salerno v. De Lucca, 211 La. 659, 30 So.2d 678 (1947); Fatjo v. Mayer, 162 So.2d 356 (La.App. 3rd Cir. 1964); Failla v. Meaux, 237 So.2d 688 (La.App. 3rd Cir. 1970). "`Restrictive covenants are to be construed most strictly against the grantor and persons seeking to enforce them, and liberally in favor of the grantee, all doubts being resolved in favor of a free use of property and against restrictions.' Munson v. Berdon, 51 So.2d 157 (La.App. 1st Cir. 1951); Wax v. Woods, 209 So.2d 329 (La.App. 4th Cir. 1968); writ ref. Tully v. Woods, 252 La. 467, 211 So.2d 330 (1968)."
The evidence reflects that this is rural property fronting on a blacktop highway. Deshotel had purchased the property in approximately 1965. He then sold a portion of same to a Joseph Ortego. No restriction was incorporated in that deed. Later, on February 20, 1967, the subject deed was executed. At that time, Deshotel was living in a home situated approximately 320 feet from the blacktop highway. This is the way the situation stood until November 1977, at which time Fruge began construction of his home which was aligned with that of Deshotel. A dispute arose over whether Fruge was building too close to the highway, resulting in these suits. After the suits were filed and at a time near trial, in January 1978, Deshotel began construction of his home immediately to the rear of his original residence. He stated that the front of his residence was one foot from the rear of his original house. Deshotel stated that the reason he inserted the clause was that he wanted to make certain that Fruge's home would be no closer to the highway than his new residence. His purpose, as previously discussed, was one of personal convenience, in that he didn't want to have to look at the side of Fruge's house from his front porch. There is no evidence that the clause was for any aesthetic purposes, nor is there any contention or evidence that the clause was in any way connected with any uniformity of setback for property value purposes. This clause had only the one purpose set out above.
Deshotel, upon being questioned by the court, testified that he had begun the construction of his new home 360 feet from the blacktop highway. He stated that his son had measured the distance.[3] Under these circumstances, Deshotel, by placing his home 360 feet from the roadway, defeated the purpose of the clause. If Fruge were ordered to move his home back to the 350foot mark, his home would still be 10 feet to the front of Deshotel's residence. Deshotel thereby created the very misalignment that he intended to obviate.
The extraordinary remedy of injunctive relief will not be granted if, as a result thereof, no real meaning or useful purpose would be served. Heard v. Seegers, 178 So.2d 789 (La.App. 2nd Cir. 1965). Under the circumstances presented by Deshotel's testimony, injunctive relief would serve no meaningful purpose.
This same reasoning is applicable for denying the plaintiff's request to dissolve the obligation for violation. It is not disputed that Fruge built his home within the 350-foot minimum, but such technical violation does not tend to defeat the purpose of the clause. Deshotel defeated his own purpose by his own action as pointed out above.
When a technical violation of a restrictive type of obligation does not defeat the purpose or object of the covenant or obligation, *263 such violation will be disregarded as immaterial to the issue. Guyton v. Yancey, 240 La. 794, 125 So.2d 365 (1960), reh. den. January 9, 1975.
Under these principles and the facts at hand, dissolution of the contract of sale is also denied.
For the above reasons, the judgment of the trial court is affirmed. Costs of the trial and the appeal are assessed one-half each to appellee and appellant.
AFFIRMED.
NOTES
[1] In the caption of the case, plaintiff's name is spelled "Deshotels"; however, in the trial court's judgment, the name is spelled "Deshotel." The latter will be used in this opinion.
[2] C.C. art. 709 provides in pertinent part as follows:

"Art. 709. Owners have a right to establish on their estates, or in favor of their estates, such servitudes as they deem proper; provided, nevertheless, that the services be not imposed on the person or in favor of the person, but only on an estate or in favor of an estate; and provided, moreover, that such services imply nothing contrary to public order."
[3] "BY THE COURT:

"How far is your house from the road?
"A. My house would be 300 and ___ if I'm not mistaken, 360.
"Q. You measured this?
"BY JULES ASHLOCK, Counsel for Fruge:
"I'm sorry, your Honor, I didn't hear what he said.
"BY THE COURT:
"360 feet.
"A. My sons measured it."